**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven A. DODSON, Defendant–Appellant.**

No. 93–3985.

United States Court of Appeals,
Sixth Circuit.

Argued March 8, 1994.

Decided June 6, 1994.

Randall E. Yontz (argued and briefed), Office of the U.S. Atty., Columbus, OH, for plaintiff–appellee.

Keith E. Golden (argued and briefed), Golden & Meizlish, Columbus, OH, for defendant–appellant.

Before: KENNEDY and MILBURN, Circuit Judges; and ALDRICH, District Judge.[*]

MILBURN, Circuit Judge, delivered the opinion of the court, in which ALDRICH, District Judge, joined. KENNEDY, Circuit Judge (pp. 391–392), delivered a separate dissenting opinion.

[*] Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

MILBURN, Circuit Judge.

Defendant Steven A. Dodson appeals the district court's order revoking his probation and sentencing him to six months' imprisonment. On appeal, the issues are (1) whether the district court violated defendant's due process rights in failing to allow defendant's attorney to question defendant during the revocation hearing, (2) whether the district court erred in failing to rule on defendant's motion to modify the terms of probation, and (3) whether the district court abused its discretion in revoking defendant's probation. For the reasons that follow, we vacate and remand.

I.

On October 15, 1992, the district court sentenced defendant for embezzlement in violation of 18 U.S.C. § 656, imposing, among other things, a fine[1] and also placing defendant on probation for a term of two years. As part of the conditions of probation, defendant was required, among other things, to submit a truthful and complete written report within the first five days of each month during the period of probation, to complete 200 hours of community service, and to reside for six months in the Ralph W. Alvis House, a community treatment center.

In July 1993, a probation violation report was filed in the district court by Patricia L. Del Vecchio, defendant's probation officer. In the report, Del Vecchio alleged a number of instances where defendant violated conditions of his probation. Specifically, Del Vecchio noted that defendant had failed to submit written monthly reports for February, March, April, and May 1993, that defendant had failed to perform 200 hours of community service, and that defendant had failed to report to the Alvis House. With respect to the latter violation, Del Vecchio stated that defendant had been given two notices to surrender to the Alvis House: one in April 1993 and one in June 1993.

A preliminary revocation hearing was subsequently held before a United States Magis-

1. A community service requirement was ultimately imposed in lieu of the fine.

trate Judge, wherein the magistrate judge concluded that probable cause existed to believe that defendant violated the probation condition requiring him to report to the Alvis House.[2] The district court thereafter conducted a final revocation hearing on September 2, 1993. After hearing the statements of Del Vecchio surrounding the failure of defendant to timely submit the monthly reports and the failure of defendant to report to the Alvis House, and after hearing the explanations provided by defendant's retained counsel of why defendant failed to submit the reports on time and to appear at the Alvis House, the district court asked defendant whether he personally wished to offer a statement before the court made a decision. Before defendant responded, defendant's counsel interjected, stating:

Your Honor, with all due respect, I think his [defendant's] response is—what he had to say *would be more appropriate in the line of testimony,* something that he would say to the Court. And in that regard, with regards to those missing—those missing months of the reports, there was a misunderstanding as to whether he was supposed to get the form or go in and get the form. It was truly a misunderstanding there; and at this point, I would prefer to provide that in the way of testimony. There was—

J.A. 29 (emphasis added). In response, the district court stated:

Well, you may prefer that, but I asked the witness—I asked the Defendant for a statement. He is under Federal Probation to me, and I asked him for a statement. If you don't have anything to say, that's your answer to that. I am giving you an opportunity to give the Court an explanation. *I don't need testimony.* You know, he doesn't need to be sworn. I will hear what he has to say without that.

*Id.* (emphasis added). Thereafter, defendant, without the assistance of his retained counsel, explained that because of the travelling required by his job, he was unable to arrange a meeting with Del Vecchio in order to provide her the completed monthly re-

ports. He also explained that he did not know whether he was to send the completed reports, or presumably, to deliver them in person. Moreover, in response to the district court's question regarding the reasons why he failed to report to the Alvis House, defendant responded:

At the time I got my notices, I wasn't in town, and I just—when I tried to get a hold of my Probation Officer, she wasn't in, or we couldn't—I mean, she would call me, but I couldn't catch her or when she—you know—when she was in a particular office and I was out on the road. I filled out each and every—all of the paperwork, but I just didn't know where to physically give it.

The community service hours, I filled those out, filled out my report every month. I signed it. I hadn't physically given to it someone. When I called in, they said that you need speak with your Probation Officer, let her receive your paperwork. I came down a couple of times. She hadn't seen her in a few months. So, I held onto the paperwork, thinking I will give it to her when I see her.

J.A. 31–32.

At the conclusion of this statement, the district court revoked defendant's probation and ordered that defendant be committed to the custody of the Bureau of Prisons for six months' imprisonment. This timely appeal followed. On September 29, 1993, we granted defendant's motion to stay execution of his sentence pending disposition of this appeal.

## II.

■ Petitioner first argues that he was denied due process because the district court prohibited him from testifying at the final revocation hearing through direct examination. Petitioner insists that had the district court afforded him the right to testify in response to questions posed by his counsel, as opposed to simply being permitted to make a limited statement which was unaided by counsel, he would have been able to show that even though he may have violated his

---

**2.** The record contains no explanation why probable cause was not also found for the remaining

violations contained in the probation violation report.

probation, he had mitigating circumstances which warranted against revoking probation. In response, the government argues that while due process requires that a defendant be permitted to be heard and present his case, due process does not require that the evidence presented by a defendant be made under oath and in response to an attorney's inquiries. Thus, the government argues that because defendant was permitted to address the charges and respond to the allegations of conduct violating the terms of probation, no due process violation occurred.

■■■ We agree with defendant that under the circumstances of this case, his inability to testify in response to questions posed by his attorney violated due process. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. Although revocation of probation is not part of a criminal prosecution, and thus the full panoply of due process protections accorded a defendant in such a proceeding do not apply to a revocation proceeding, the loss of freedom embodied in the revocation of probation constitutes a deprivation of a defendant's liberty. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973); *see also Minnesota v. Murphy,* 465 U.S. 420, 435 n. 7, 104 S.Ct. 1136, 1146 n. 7, 79 L.Ed.2d 409 (1984). Consequently, a defendant's probation may not be revoked without first according the defendant due process. *Bearden v. Georgia,* 461 U.S. 660, 669, 103 S.Ct. 2064, 2071, 76 L.Ed.2d 221 (1983).

■■■ Where, as here, the sentencing authority is given discretion to determine whether violation of a condition is sufficient to revoke probation, *see* 18 U.S.C. § 3565(a), due process requires that the probationer be afforded a hearing before the final decision on revocation is made. *Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985). This final revocation hearing, which must lead to an ultimate consideration of whether the facts as ascertained warrant revocation, is intended to provide the probationer with the "opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Morrissey v. Brewer,* 408 U.S. 471, 488, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972). In order to ensure a constitutionally sufficient opportunity to contest the allegations and provide *evidence in mitigation, a defendant must also be afforded as a matter of due process the opportunity to be heard in person and to present witnesses and documentary evidence. See Gagnon,* 411 U.S. at 782, 93 S.Ct. at 1760 (adopting the due process requirements for revocation of parole as set forth in *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604).

The ability of a defendant to present effectively his case by himself, however, necessarily depends on the complexity of the evidence. Thus, in a relatively simple case where the facts are undisputed, a defendant in most instances will be able to articulate the circumstances in his favor in the form of a statement to the court which would suggest that the probation violation does not warrant revocation. In contrast, where the facts surrounding the alleged violation are convoluted or in dispute, a defendant's opportunity to show that circumstances in mitigation weigh against revocation may be rendered meaningless. Indeed, the Supreme Court has said as much in *Gagnon* where it noted that in some instances the probationer's "version of a disputed issue can fairly be represented *only by a trained advocate." Id.,* 411 U.S. at 788, 93 S.Ct. at 1763 (emphasis added).

■■■ Therefore, the effectiveness of the procedural due process rights accorded a defendant at a probation revocation hearing may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. When that is the case, due process also requires that a defendant be represented at a revocation hearing either by retained or appointed counsel. The determination of whether a defendant is entitled to be represented by counsel and use counsel to call witnesses, including the defendant, must be made on a case-by-case basis, and the Supreme Court has set forth the relevant inquiry:

[p]resumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request

counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Id.* at 790, 93 S.Ct. at 1764.

Based on our review of the facts in this case, we conclude that defendant was entitled to representation by counsel at the final revocation hearing because there are substantial reasons which justify or mitigate his probation violations and these reasons are sufficiently complex or difficult to develop or present. At the final revocation hearing, the Assistant United States Attorney stated that the only violation at issue was defendant's failure to report to the Alvis House. The circumstances surrounding defendant's failure to report to the Alvis House, however, are unclear. According to the probation violation report,

> [t]he Bureau of Prisons first sent notice on April 14, 1993 which instructed [defendant] to report to the Alvis House on April 16, 1993. [Defendant] was able to have the date changed to a later date due to the fact he was given forty-eight hours notice and would be unable to report. The Bureau of Prisons advised [Del Vecchio] on June 15, 1993 that [defendant] was to report to the Alvis House for Men on June 25, 1993. [Del Vecchio] sent notice to [defendant] and also left messages on his answering machine for [defendant] to report to the Alvis House for Men. [Defendant] never responded to the letter or the telephone messages and failed to report to the Alvis House for Men [on] June 25, 1993.

J.A. 15. Del Vecchio stated at the final revocation hearing that defendant's failure to report to the Alvis House in April 1993 was excusable because defendant was not given sufficient notice. Del Vecchio also stated that at the time she left a message on defendant's answering machine and sent a letter to defendant's house notifying him that he was to report to the Alvis House on June 25, 1993, she was unaware that defendant was in Cincinnati on business. There is no evidence, however, explaining why Del Vecchio did not know the whereabouts of defendant. Moreover, it is unclear, among other things, whether defendant made reasonable efforts to contact Del Vecchio and whether defendant and Del Vecchio had made arrangements to remain in contact when defendant travelled to Cincinnati. Had defendant been able to respond to questions posed by his attorney in this regard, many of the ambiguities would be resolved and the district court could have been able to make an informed decision on whether this violation warranted revocation.

Additionally, in its order denying defendant's motion for stay of sentencing pending appeal, the district court concluded that defendant's failure to timely submit his monthly reports provided an additional basis for the revocation. The circumstances, however, surrounding defendant's failure to timely submit monthly reports are ambiguous. In the probation violation report, Del Vecchio alleged that defendant failed to submit written monthly reports for the months of February, March, April, and May 1993. But defendant apparently submitted these reports by the time of the final revocation hearing, given the fact that Del Vecchio conceded before the district court that "upon [defendant's] surrendering back in July, ... he has completed all of the delinquent monthly reports." J.A. 24. At the final revocation hearing, Del Vecchio provided no facts surrounding this violation. Nonetheless, according to defendant, although he apparently agreed that he failed to submit the monthly written reports on a timely basis, he contended that his tardiness was not attributable to the fact that he did not complete the forms, but rather that he was unaware to whom he was to give the reports. Defendant's ignorance might be understandable in light of the fact that the conditions of probation required that defendant "shall submit a truthful and complete written report within the first five days of each month," J.A. 8, but failed to specify to whom the reports were to be submitted. Had defendant's counsel been able to ques-

tion defendant, however, counsel could have asked defendant what he understood the terms of the probation to be, what he was told by Del Vecchio, and what specific efforts he made in fulfilling the monthly report requirement.

The government would have us conclude, however, that defendant's due process right to representation by retained counsel was afforded in this case, given the fact that the district court permitted defendant's counsel to offer explanations of why defendant failed to abide by the probation conditions. The government's position, however, fails to recognize that a defendant's constitutional right to representation necessarily encompasses the constitutional right to have counsel perform the duties in which he has been trained. As noted by the Supreme Court,

> [d]espite the informal nature of the [final revocation] proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence.

*Gagnon*, 411 U.S. at 786–87, 93 S.Ct. at 1762. Although defendant's counsel was present at the final revocation hearing, counsel was in essence prohibited from representing defendant when the district court barred the attorney from questioning defendant *as a witness* on the circumstances surrounding the alleged probation violations. Given the complexity of the facts in this case, we conclude that defendant could not effectively present his version of the disputed facts without responding to questions posed by his counsel. Accordingly, we conclude that the district court's action in preventing defendant's counsel from asking defendant questions regarding the alleged probation violations constituted a deprivation of defendant's due process rights.

 In light of our conclusion, we shall vacate the district court's order revoking probation and sentencing defendant to six months' imprisonment and remand the case to the district court to conduct a final revocation hearing consistent with this opin-

ion. On remand, defendant's counsel may call other witnesses in addition to defendant in order to present defendant's explanations and to present evidence in mitigation because there is no indication in the record that defendant was informed of his right "to present witnesses and documentary evidence," or his right to "confront and cross-examine adverse witnesses," *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), and because there is no indication that defendant specifically waived his right to present witnesses. As we stated in a similar context:

> We are not persuaded by the suggestion ... that appellant waived his right to present evidence of mitigating circumstances because he did not make an appropriate request at the hearing. The responsibility rests with the Parole Board to conduct a proper hearing no matter how informal, which meets the basic requirements of due process.... A waiver of a constitutional right, particularly one involving individual liberty, must be knowingly and intelligently given. In the present case there is no indication in the record that appellant was advised by the Board of his right to present mitigating evidence; nor is there any indication of a specific waiver. Certainly a waiver cannot be presumed from a silent record.

*Preston v. Piggman*, 496 F.2d 270, 274 (6th Cir.1974) (citations omitted). Thus, it is of no consequence that defendant's counsel failed to call any witnesses at the final revocation hearing. On remand, the district court may, of course, limit confrontation with an adverse witness if the court specifically finds good cause. *Black v. Romano*, 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985). In view of our conclusion, it is not necessary for us to address the other issues raised by defendant.

### III.

For the foregoing reasons, the order of the district court revoking defendant's probation and sentencing defendant to six months' imprisonment is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

KENNEDY, Circuit Judge, dissenting.

While I agree with the majority of the Court that the defendant had a right to be heard, and that with respect to whether he had violated his probation, a right to testify on his own behalf, I part company with the majority on its holding that he had a constitutional right to be called as a witness and examined by his counsel with regard to possible mitigating circumstances that bear on his sentencing. Defendant had admitted his violations of the terms of his probation. The probation revocation hearing had progressed beyond the violation or the guilt phase. The question before the Court was therefore whether he should be continued on probation or sentenced to custody and, if so, to what period within the guideline range.[1]

There does not appear to have been any factual dispute regarding his violation which could require testimony. Further, although defendant's counsel now says he wanted to call the probation officer as a witness, no such request was made to the District Court. I view the issue here as whether a District Court must permit a defendant to explain, through questioning by an attorney and answers by the defendant, presumably under oath, why he should receive leniency because of mitigating circumstances. I agree defendant was entitled to an attorney. This is because I view the proceedings as a sentencing. Although he had received a probationary sentence and was given community service in lieu of a fine, the custodial part of his sentence had not been addressed when he had been placed on probation. In my opinion, such cases are controlled by *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (probationer entitled to be represented by counsel at a combined revocation and sentencing hearing).

The majority appears to hold that questions and answers are constitutionally required, at least if that procedure is requested. The defendant here, in my opinion, is no different than any defendant facing sentencing. He is entitled to have his attorney address the court, and he is entitled to address the court directly. However, I do not believe the Constitution gives him a right to present any mitigating circumstances through testimony; that is, questions by his attorney and answers by defendant under oath. During my twenty-seven years as a state trial judge, a federal district judge and on this Court, I have never heard such a right being accorded. Lawyers are required at sentencing, yet Rule 32(a) provides only that counsel and defendant have the opportunity to speak. As the Supreme Court stated in *Hurtado v. California*, 110 U.S. 516, 528, 4 S.Ct. 111, 117, 28 L.Ed. 232 (1884),

[A] process of law, which is not otherwise forbidden, must be taken to be due process of law, if it can show the sanction of settled usage both in England and in this coun-

1. The request to present testimony came in the following context:

THE COURT: So, the violation report is for failing to submit written reports in February, March, April, and May. And the Defendant failed to do that, and it is after she had so instructed Mr. Dodson.

And then we have—then we have this failure to communicate with the Probation Officer, which seems to be the whole problem in this case, Mr. Dodson. Do you have anything to say before the Court—to the Court before it makes a decision in this case?

MR. GOLDEN: Your Honor, with all due respect, I think his response is—what he had to say would be more appropriate in the line of testimony, something that he would say to the Court. And in that regard, with regards to those missing—those missing months of the reports, there was a misunderstanding as to whether he was supposed to get the form or go in and get the form. It was truly a misunderstanding there; and at this point, I would prefer to provide that in the way of testimony. There was—

THE COURT: Well, you may prefer that, but I asked the witness—I asked the Defendant for a statement. He is under Federal Probation to me, and I asked him for a statement. If you don't have anything to say, that's your answer to that. I am giving you an opportunity to give the Court an explanation. I don't need testimony.

You know, he doesn't need to be sworn. I will hear what he has to say without that.

MR. GOLDEN: Okay.

Joint App. at 28–9.

Defendant thereupon explained his difficulties in contacting his probation officer; that he filled out his reporting form but instead of sending this in or leaving them when he came to the probation office, he carried them until he could see his probation officer personally. He had previously explained that he did not report to the halfway house because he would have to give up his job since he had been transferred.

try.... [That which] in substance, has been immemorially the actual law of the land ... is due process of law.

"[N]o procedure firmly rooted in the practices of our people can be so 'fundamentally unfair' as to deny due process of law." *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 38, 111 S.Ct. 1032, 1053, 113 L.Ed.2d 1 (1991) (Scalia, J., concurring). For us to now say that a defendant has a constitutional right under due process to proceed by question and answer in that fashion, seems to me to be a radical change. Once this constitutional right is declared, lawyers would feel that they had to ask for that procedure. It would apply to state courts as well as federal sentencings. Failing to find a constitutional right in this case would not mean that questions and answers would never be required; however, the standard of review would be different.[2] If questions and answers were necessary in a particularly complex case, it would be an abuse of discretion not to permit them. I would review defendant's request here under an abuse of discretion standard and would find no abuse here.

---

**2.** For example, in death penalty cases or where a jury imposes a sentence, question and answer testimony may be required since those proceedings are more analogous to a trial.