**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Kenneth STOCKS,**
**Defendant–Appellant.**

No. 95-30074.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1996.

Decided Jan. 10, 1997.

Stephen D. Sady and Dennis N. Balske, Assistant Federal Public Defender, Portland, Oregon, for the defendant-appellant.

Gary Y. Sussman, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.

Before: NOONAN, LEAVY and HAWKINS, Circuit Judges.

## OPINION

NOONAN, Circuit Judge:

William Kenneth Stocks appeals the revocation of his probation and imposition of a new sentence by the district court. At the heart of his appeal is the validity of his waiver, without the benefit of counsel, of a hearing on the modification of probation that preceded the violation which led to the revocation of the probation. No precise precedent exists. Common sense and fairness must guide us. We affirm the judgment of the district court.

### PROCEEDINGS

In July 1992, Stocks pleaded guilty to unlawfully possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). The district court placed him on probation for two years, subject to the special conditions that he be confined in a community corrections center for six months and enrolled in a drug treatment program. The district court assigned U.S. Probation Officer Rudolph Guice, Jr. to serve as Stocks' probation officer.

After Stocks failed to satisfy the requirements of his drug treatment program, Probation Officer Guice approached Stocks about returning to the community corrections center for more treatment. Stocks agreed to waive his Rule 32.1(b) rights to a hearing and counsel and agreed to the proposed modification of his probationary term. Stocks signed a waiver form and assented to the proposed modification. In April 1994, the district court modified the conditions of Stocks' probation to include up to four additional months in the community corrections center.

At the community corrections center, Stocks tested positive for the use of methamphetamine. Based on the test and Stocks' admission that he had been using drugs,

Guice asked Stocks to agree to modify the term of his probation a second time. The second modification extended Stocks' probation by one year and required Stocks to participate in a residential drug treatment program. Stocks agreed to the proposed modifications.

After Stocks decided to agree to the second modification, he signed a form entitled "Waiver of Hearing to Modify Conditions of Probation/Supervised Release or Extend Term of Supervision." The waiver read in pertinent part:

I have been advised and understand that I am entitled by law to a hearing and assistance of counsel before any unfavorable change may be made in my Conditions of Probation and Supervised Release or my period of supervision being extended. By 'assistance of counsel,' I understand that I have the right to be represented at the hearing by counsel of my own choosing if I am able to retain counsel. I also understand that I have the right to request the court to appoint counsel to represent me at such a hearing at no cost to myself if I am not able to retain counsel of my own choosing.

I hereby voluntarily waive my statutory right to a hearing and to assistance of counsel.

In September 1994, the district court, in a written order, modified Stocks' probationary term and conditions pursuant to this waiver.

In December 1994, Stocks once again tested positive for drug use. The district court issued a warrant for Stocks' arrest and instituted probation revocation proceedings.

On January 19, 1995 Stocks moved to dismiss the alleged violation of his probation or "to dismiss pursuant to 28 U.S.C. § 2255." A hearing on these motions was combined with the hearing on the revocation of his probation and held on February 13, 1995. After a colloquy with the district court, Stocks effectively abandoned his § 2255 motion, but the district court permitted him to maintain an attack on the September 1994 modification of his term of probation. Stocks argued that that modification was invalid because it had occurred without a hearing and

without his being afforded the assistance of counsel.

The district court ruled that Stocks indeed had a right to a hearing and to counsel and that those rights could be waived by Stocks. The district court found as a fact that his waiver had been knowing, voluntary and intelligent. Consequently, the district court denied Stocks' motion to dismiss the revocation proceeding. The district court then revoked his probation and sentenced him to imprisonment of two years with a term of supervised release.

Stocks appeals, challenging the validity of his September 1994 waiver.

### ANALYSIS

■ *Jurisdiction.* Neither side has questioned the jurisdiction of the district court to entertain Stocks' motion attacking the September 1994 modification. It is, however, our unflagging obligation to be sure that jurisdiction exists. A question arises here because, once the court had entered the judgment making the modification, there was no way in which Stocks could challenge it. He met none of the requirements of Fed. R.Crim.P.35, nor did he satisfy 18 U.S.C. § 3564(c). He abandoned his § 2255 motion. The district court, nonetheless, believed that his motion could be entertained as a part of the hearing on the revocation of probation. If Stocks had brought his motion in a separate proceeding the court's jurisdiction would have been doubtful. The court, however, had jurisdiction of the revocation proceeding and did not lose this jurisdiction by entertaining a motion that it did not have to consider. Consequently we hold that jurisdiction existed in the district court and exists in this court to consider Stocks' appeal from the ruling on the validity of his waiver.

■ *Stocks' Argument.* Stocks contends that the September 1994 extension of his probation "occurred without counsel, in violation of the Sixth Amendment, due process, the probation modification statute, the Rules of Criminal Procedure, and the Criminal Justice Act." He further argues that the actual waiver form was defective because it identified the right of counsel as a right to be represented at a hearing but failed to note that he had a right to counsel prior to a hearing.

The Governing Statute and Rule. The statute governing the modification of probation, 18 U.S.C. § 3563(c), and Federal Rule of Criminal Procedure 32.1(b) require that a probationer receive a hearing and advice of counsel before the term and conditions of his probation may be modified. The probation modification statute provides:

> The Court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation.

18 U.S.C. § 3563(c). Fed.R.Crim.P. 32.1(b) provides:

> A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation or supervised release upon the person's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected. An extension of the term of probation or supervised release is not favorable to the person for the purposes of this rule.

The rights guaranteed by Fed.R.Crim.P. 32.1(b) are subject to waiver. *See generally United States v. Mezzanatto,* 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) ("The provisions of [the Federal Rules of Criminal Procedure] ... are presumptively waivable....").

The Rule 32.1(b) rights to a hearing and counsel before a term of probation is extended, while statutorily created, are rooted in a trilogy of Supreme Court cases addressing the scope of constitutional protection in the probation and parole contexts. In the first of the trilogy, *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the

defendant was placed on probation and the "imposition of sentence was deferred." 389 U.S. at 130, 88 S.Ct. at 255. After the defendant violated the conditions of his probation, the district court, without asking the unrepresented defendant whether he wanted appointed counsel, revoked his probation and imposed a ten-year jail term. The Supreme Court held that the defendant-probationer had a Sixth Amendment right to counsel at the combined probation revocation and sentencing hearing. The Supreme Court concluded that the imposition of the "deferred" sentence after probation was revoked triggered the Sixth Amendment because sentencing is a "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134, 88 S.Ct. at 257.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court turned from the imposition of a deferred sentence following the revocation of probation to procedural protection applicable to parole revocation proceedings. The Court held that the loss of liberty that may result from revocation of parole gives rise to a liberty interest cognizable under the Due Process Clause. After *Morrissey*, parole may not be revoked unless the parolee is afforded a hearing as to probable cause and a final revocation hearing. At the preliminary parole revocation hearing, a parolee is entitled to notice of the alleged parole violations, an opportunity to appear and to present evidence, a conditional right to confront the government's witnesses, an independent decision-maker, and a written report of the hearing. *See Morrissey*, 408 U.S. at 485–487, 92 S.Ct. at 2602–03. The "minimum requirements of due process" applicable to the final revocation hearing are substantially similar. *See Id.* at 489, 92 S.Ct. at 2604. The question of "whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent" was left open. *Id.*

*Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), explored the application of the *Mempa* and *Morrissey* analyses to probation revocation. First, the Supreme Court, distinguishing *Mempa*, held that because "the probationer was sentenced

at the time of trial" rather than subject to a deferred or suspended sentence, the Sixth Amendment did not apply to the probationer's revocation hearing. *See* 411 U.S. at 781, 93 S.Ct. at 1759. The Supreme Court concluded, however, that a probationer facing revocation must be afforded at least the same level of process guaranteed to parolees in *Morrissey*, namely a preliminary and a final revocation hearing. *Id.* at 781–82, 93 S.Ct. at 1759–60.

The Supreme Court then turned to the "more difficult" question of whether "an indigent probationer or parolee has a due process right to be represented by appointed counsel at these hearings." *Id.* at 783, 93 S.Ct. at 1760. The Supreme Court found "no justification for a new inflexible constitutional rule with respect to the requirement of counsel," but rather held that "the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Id.* at 790, 93 S.Ct. at 1763–64. The Supreme Court emphasized three general considerations relevant to whether counsel should be appointed for the probationer facing revocation: whether the probationer contests the alleged violation of his or her probation conditions, whether the probationer wishes to present evidence of mitigating circumstances that make revocation inappropriate, and whether the probationer is able to speak effectively for himself. *Id.* at 790–91, 93 S.Ct. at 1763–64.

In sum, the Supreme Court developed in *Mempa*, *Morrissey*, and *Gagnon* a core of constitutionally-protected rights tailored to the probation and parole contexts. These rights arose out of a recognition of two related interests: a probationer's interest in receiving assistance of counsel when probation-related proceedings are intertwined with (re)sentencing (*Mempa*), and, more generally, a probationer's and parolee's due process interest in remaining free from the restrictions on liberty that are characteristically imposed as part of a probationary or parole term (*Morrissey* and *Gagnon*).

Rule 32.1(b) is founded on the constitutional principles announced and developed in

*Mempa, Morrissey,* and *Gagnon.* The notes accompanying Rule 32.1 trace the origins of the Rule to *Morrissey* and *Gagnon:*

> Since *Morrissey v. Brewer* and *Gagnon v. Scarpelli,* it is clear that a probationer can no longer be denied due process in reliance on the dictum in *Escoe v. Zerbst,* 295 U.S. 490, 492 [55 S.Ct. 818, 819, 79 L.Ed. 1566] (1935), that probation is an 'act of grace.'

**Fed.R.Crim.P.** 32.1, Advisory Committee Notes (citations omitted). The advisory note is taken almost verbatim from *Gagnon. See Gagnon,* 411 U.S. at 782 n. 4, 93 S.Ct. at 1760 n. 4. *See also United States v. Warden,* 705 F.2d 189, 190 n. 1 (7th Cir.1982) (per curiam) (noting that Rule 32.1(b) is rooted in *Morrissey* and *Gagnon* ).

The Advisory Committee Notes acknowledge not only the link between the due process jurisprudence of *Morrissey* and *Gagnon* and Rule 32.1, but also the link between probation modification and sentencing:

> Probation conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation. The sentencing court is given the authority to shorten the term or end probation early upon its own motion without a hearing. And while the modification of probation is a part of the sentencing procedure, so that the probationer is ordinarily entitled to a hearing and presence of counsel, a modification favorable to the probationer may be accomplished without a hearing in the presence of defendant and counsel.

**Fed.R.Crim.P.** 32.1(b), Advisory Committee Notes (citations omitted).

■ More generally, the Rule 32.1(b) rights at issue in this appeal are closely associated with the two interests that provided the foundation for the Supreme Court's analyses in those three cases: a probationer's interest in being represented at the time a sentence is imposed and a probationer's liberty interest in remaining free from probation-related restrictions. Given the importance of these interests and the role Rule 32.1(b) plays in securing these interests in the probation modification context, the Rule 32.1(b) rights at issue require the application to a waiver of the knowing, intelligent, and voluntary standard.

The Application of Governing Law to This Case. The district court found as a matter of fact that Stocks' waiver was knowing, intelligent and voluntary, as governing law requires. Stocks can succeed on this appeal only by showing that the district court was clearly erroneous in these factual determinations. Whether a waiver was voluntary is reviewed de novo, *United States v. Bautista–Avila,* 6 F.3d 1360, 1364 (9th Cir.1993); whether a waiver was knowing and intelligent is reviewed for clear error. *United States v. Doe,* 60 F.3d 544, 546 (9th Cir.1995).

That Stocks knew what he was doing is apparent from his earlier agreement to modify the terms of his probation, a modification which had led to his subsequent placement in a community correction center different from the center he had been in. By the same token, his waiver was intelligent. He had had the experience of having the conditions of his probation changed. He does not argue that he was coerced into the agreement. It is true that the probation officer, in his dual capacity of advisor to the probationer and representative of the community, was acting to a substantial degree in the latter capacity when he proposed the modification. He made no threats and he had no tools by which to compel Stocks' consent. As the district court found, Stocks freely agreed to the modification.

■ On this appeal, Stocks argues that the waiver was defective because of its definition of "assistance of counsel." The argument is, in effect, that before waiving counsel at a hearing Stocks must have counsel to advise him whether such a waiver is in his interest. Nothing in the Constitution or any statute or rule requires such a result.

Stocks argues that the Criminal Justice Act is relevant: "A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate or the court through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c). The Act also states that representation shall be provided

any financially eligible person who is "charged with a violation of probation." 18 U.S.C. § 3006A(a)(1)(C). It is apparent that the first statutory reference is only to appointment "through appeal" and does not include probation and that the second statutory reference is to a person "charged with a violation of probation" without reference to the point at which representation must be provided.

**AFFIRMED.**