Greg LATSON, Appellant–Defendant,

v.

UNITED STATES of America, Plaintiff–Appellee.

No. 02–3979.

United States Court of Appeals, Sixth Circuit.

June 9, 2003.

BEFORE: NORRIS and BATCHELDER, Circuit Judges, and BARZILAY, Judge.*

## OPINION

BARZILAY, Judge.

Appellant Greg Latson appeals the revoking of his probation. The revocation relied, in part, on a series of violations to which Latson admitted at an earlier meeting with his probation officer. At that meeting Latson waived his right to counsel and a hearing and agreed to a modification of his probation. Latson appeals the revocation because he claims he did not receive fair notice that his admitted violations could be used, in part, at a subsequent revocation hearing, and that to rely on the admission is a violation of his constitutional rights to due process under the Fifth Amendment. Latson also appeals the use of the admission because the district court relied on some of the same violations to revoke his probation that were used by the probation officer to modify his probation. Finally, Latson claims that the admission of those violations was improper because he waived his right to counsel and a hearing without a judicial inquiry as to whether the waiver was "knowing, intelligent and voluntary." For the reasons detailed below, the court affirms the district court's revocation.

## I. BACKGROUND

Appellant Latson pleaded guilty on August 24, 1999 to one count of using the United States Mails "to knowingly cause to be delivered" claim checks to defraud an insurance company. As a result of that plea agreement, Latson received three years probation and was ordered to pay

---

* The Honorable Judith M. Barzilay, Judge, United States Court of International Trade sitting by designation.

restitution of $11,350. Under the terms of the agreement Latson agreed to make payments of "no less than 10% of [his] gross income within a 6 month period."

On June 27, 2002, Latson met with his probation officer. At that meeting Latson and the probation officer discussed his failure to complete an aftercare program for drug abuse and failure to pay restitution. At the conclusion of that meeting, Latson agreed to an extension of his probation for an additional two years or until restitution was paid. Latson signed a form entitled "Waiver of Hearing to Modify Conditions of Probation."[1] It is this waiver which Latson is challenging on appeal. Latson claims that at that meeting he informed his probation officer that he had secured a new job, which would change his work schedule. At his previous job his hours were from 7:00 a.m. to 3:00 p.m. His aftercare program was scheduled from 6:00 p.m. to 7:30 p.m. At his new job the hours would be from 2:00 to 7:00 p.m., meaning he would have to change the time of his aftercare meeting. The new job also required a training period, from 9:00 a.m. to 6:00 p.m. for six weeks, but he did not know about this until after the June 27 meeting.

On July 2, 2002, Latson's probation officer filed a violation report with the district court, which reflected the result of the June 27 meeting. The report noted that Latson had paid only $890.00 of the restitution. The report also stated that on September 17, 2001, Latson was involved in an auto accident, and the resulting injuries made him unable to work. However, the report noted that he had returned to work as of June 2002. The report stated that Latson had completed a drug aftercare program in October 2000, but had since tested positive for marijuana use. He attended additional counseling, but continued to test positive from January 31, 2001 through January 28, 2002. To address the continued drug use, Latson enrolled in an "Intensive Outpatient Treatment" program. That program was completed in April of 2002, and Latson has not tested positive since. However, Latson did fail to attend aftercare treatment which is part of the program, and the probation officer verbally reprimanded him. The probation officer advised him "that he is to start attending his weekly aftercare classes immediately or Court action would be requested." The district court modified Latson's probation consistent with the June 27 agreement on July 12, 2002.

On July 3, 2002, Latson attended the aftercare meeting. Latson did not attend the next three of the four remaining sessions scheduled for July 10, 17, and 24. This is the same period of time Latson claims he was in the training program for his new job, which started on July 8, 2002. Latson claims he told his probation officer about the new schedule, which interfered with the aftercare program.

---

1. The waiver is dated June 10, 2002. It is signed by Latson and the probation officer (as a witness). The text of the waiver reads:

   I have been advised and understand that I am entitled by law to a hearing and assistance of counsel before any unfavorable change may be made in my Conditions of Probation or Extend Term of Supervision. By "assistance of counsel," I understand that I have a right to be represented at the hearing by counsel of my own choosing if I am able to retain counsel. I also understand that I have a right to request the court to appoint counsel to represent me at such a hearing at no cost to myself if I am not able to retain counsel of my own choosing.

   I hereby voluntarily waive my statutory right to a hearing and assistance of counsel. I also agree to the following modification of my Conditions of Probation or Extend Term of Supervision:
   **Probation is extended to 5 years total, or until restitution is paid in full.**

On August 13, 2002, the probation officer filed another violation report with the district court. The two violations cited were:

1. Failure to Comply with Aftercare—Since completing Intensive Outpatient Treatment, Mr. Latson has failed to attend aftercare with the Oriana House as instructed by his probation officer.

2. Failure to Complete Monthly Supervision Reports—The offender failed to submit monthly supervision forms for June 2002 and July 2002.

The August report recounts the failure to comply with the drug treatment program which provided the basis for his modification of probation on July 2, 2002. It also reported that he missed the July aftercare meetings. The report explicitly states, with regard to Latson's new employment, that Latson had advised his probation officer in June that he was working for his previous employer, but "since that time he has failed to notify the probation officer of any change in employment or if he is even still employed." The report recommends that the district court "issue a summons." The court issued the summons on August 15, 2002.

On August 27, 2002, Latson appeared before the district court, represented at this time by counsel, Dennis Terez. Latson again waived a hearing and admitted to the violations as described in the violations report. Before deciding to revoke probation the judge allowed counsel and defendant to speak. Counsel for Latson pointed out that the previous modification of his probation was done without counsel or a hearing, and that "probation should not have been extended." The court noted that the grounds for revoking probation were incidents that occurred within the original three year term, and therefore the revocation was not dependent on the validity of the extension.

The court allowed Latson a chance to explain his non-compliance. Latson recounted his job history, and his recent successful efforts to avoid drug use. He also explained that he had not made more payments toward restitution because his first concern had been paying off his monthly bills including utilities, but that he was now ready to address the outstanding balance on the restitution. The judge then announced his decision:

So I'm not real persuaded and I'm going to find that you violated the terms of your probation. I'm going to find it's a Grade C violation and I'm going to sentence you to a period of incarceration of four months. And apart from the recommendation of the government, I'm going to order that after you are released from that incarceration, you serve an additional year of supervised release.

After this ruling, Latson again asked the court for understanding. It is at this point during the hearing the judge indicated that he relied, at least in part, on Latson's cumulative record of violations.

MR. TEREZ: I think my client's point, Your Honor, is the noncompliance is a meeting that he deemed by himself—I agree he shouldn't have that authority—was unnecessary. I think that's what he's trying to express to Your Honor.

THE COURT: And I understand that, and I salute him for it looks like he stayed off drugs, but it's still not a thing where it's a voluntary program—

MR. TEREZ: He understands that, Your Honor.

THE COURT: —where we attend when we want to attend.

And if it was even a couple of violations, the argument would have more merit, but we are in a situation where we've had time after time after time

after time after time to the point where this is the ninth time.

MR. TEREZ: I agree, Your Honor.

I think the point my client is trying to make, though, is he also not only has to attend those kind of meetings, but attend the various family obligations.

THE COURT: Well, he should have brought it to the Court, I mean, for a request to modify it, but let me just— you may have a right to take an appeal from this.

Latson was then remanded into custody of the United States Marshall, Akron, Ohio. The district court denied Latson's motion for bond pending appeal. The Sixth Circuit denied Latson's motion for release pending appeal on September 20, 2002.

This Court exercises jurisdiction under 28 U.S.C. § 1291, which provides for review of final decisions of the district courts. Specifically, the Court may review a "final sentence" to determine if it was "imposed in violation of law." 18 U.S.C. § 3742(a)(1).

## II. ANALYSIS

Latson challenges the constitutionality of his initial waiver of hearing and counsel on June 27, 2002, which modified his probation based on specific violations. Latson claims that he did not understand that his admission to those violations could, in part, be used a month later to revoke his probation. Latson's argument that his due process rights were violated centers around three issues. The first two are specific to the facts of his case. First, Latson claims that the waiver was improper when its contents were used in the subsequent revocation hearing because he was not given "fair notice" that those violations could later be used as grounds for revoking probation. Second, he claims that because of the waiver and admission to previous violations, he was not given a "clean slate" to

voice his challenge to his revocation. Latson's last contention is that waivers like the one in this case are deficient because the judge did not do a searching inquiry to verify that the waiver was knowing, voluntary and intelligent consistent with this Court's opinion in *United States v. McDowell,* 814 F.2d 245 (6th Cir.1987), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987).

The district court's decision to revoke probation is reviewed under an abuse of discretion standard. *United States v. Lowenstein,* 108 F.3d 80, 85–86 (6th Cir. 1997). Whether a waiver is knowing and intelligent is a mixed question of law and fact and reviewed de novo. *Lott v. Coyle,* 261 F.3d 594, 610 (6th Cir.2001), *cert. denied,* 534 U.S. 1147, 122 S.Ct. 1106, 151 L.Ed.2d 1001 (2002).

Latson faces several hurdles to establish error by the district court in this case. First, all of Latson's violations occurred within the time frame of his original three year probation. Therefore, Latson contests a modification which is irrelevant to his violations. Additionally, even if the court were to exclude from consideration any violations that occurred prior to the contested waiver, Latson committed additional violations after that waiver and modification which provide sufficient grounds for revocation. Even overlooking these factual problems in Latson's case, his claims of due process violations are without merit. From the record it appears Latson did receive fair notice that any new violations after his modification would result in "court action." There also is no due process right, in these kinds of hearings, to a "clean slate." Finally, the right to counsel and a hearing can be intelligently waived for purposes of probation modification without the searching questioning which Latson contends must be done in every case.

A. *Appellant was not deprived of fair notice.*

■ At Latson's revocation hearing he stipulated that he "violated the terms of [his] probation by failing to comply with the after-care outpatient treatment program," and "by failing to complete monthly supervision reports." It was these two specific violations that the judge relied on in revoking probation and imposing the four month incarceration. The violations were not incidents covered in the report from the June 27 meeting. Therefore, even if the judge ignored all violations stipulated to at the June 27 meeting where Latson had neither a hearing nor counsel, there is still sufficient grounds for revoking probation. Under 18 U.S.C. § 3565(a)(2) a single violation of a condition of probation is enough to revoke probation. *See also United States v. Lindo,* 52 F.3d 106, 108 (6th Cir.1995).

The district court also confirmed that the violations occurred during the original term of probation. Therefore, not only did he have grounds to revoke based on new incidents after the June 27 meeting, those new incidents of probation violation did not rely on the extension of probation that resulted from that meeting and waiver.

Latson claims that he was denied fair notice or warning of what conduct might result in a violation. Lack of fair notice can amount to a violation of due process. In *United States v. Twitty* this Court held that "[d]ue process requires, among other things, notice or fair warning of what conduct might result in revocation." 44 F.3d 410, 412 (6th Cir.1995) (citations omitted). In *Twitty* the district court revoked probation for activity that occurred prior to the beginning of the probation period. Without the terms of probation in place, the Court found that the defendant could not violate a condition of probation before it exists.[2]

■ It is clear from the record in Latson's case, that he was given fair notice of the consequences of his actions. The violation report filed after the June 27 meeting indicates that the probation officer did warn Latson that he was at risk of additional penalties. The report states Latson "was advised that he is to start attending his weekly aftercare classes immediately or Court action would be requested." Latson did not dispute that he received this warning at his revocation hearing. This specific notice is in addition to the listed terms of his probation. After this warning, Latson missed three aftercare sessions and failed to file two reports. Latson was placed on notice that his previous violations had brought him close to a situation where any new violation would result in "court action." Despite this warning, Latson continued to violate the terms of his probation. It does not violate due process to revoke probation consistent with the warning given to the probationer.

B. *Courts need not conduct a revocation hearing on a "clean slate."*

■ Latson also claims that he suffered an injury because he "was not given a clean slate upon which to voice his challenge."[3] Latson's brief does not point to

---

**2.** Twitty committed her first crime of credit card theft in July 1992 and pleaded guilty to that crime on October 13, 1992. Sentencing was delayed until January 7, 1993. In the meantime, in December 1992, she stole three checks and cashed them. At her January sentencing hearing she received five years probation. In October 1993, she pleaded guilty to the check stealing and was sentenced on state charges to 5 years probation. Based on that conviction the federal district court revoked her probation for the initial credit card crime. *See Twitty,* 44 F.3d at 411–12.

**3.** The transcript from the revocation hearing, excerpted above, indicates that the district judge was at least aware of Latson's past lapses, and may have relied on those previous violations to shape his decision to revoke.

any caselaw to support this contention. It also does not appear to violate due process rights for a district court to look to past convictions, not just the most recent violation in sentencing proceedings, even if that record includes "uncounseled" convictions. *See, e.g., United States v. Logan,* 250 F.3d 350, 377 (6th Cir.2001). *cert. denied,* 534 U.S. 895, 122 S.Ct. 216, 151 L.Ed.2d 154. In *Logan,* the Sixth Circuit affirmed a district court decision to assess "one criminal history point" for a prior conviction where that conviction was the result of a plea by the defendant without assistance of counsel. *Id.* at 377. The Court addressed the defendant's claim that *Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), prohibited consideration of the "uncounseled misdemeanor conviction" because it resulted in a term of imprisonment.[4] *Logan,* 250 F.3d at 377. The Court held that *Nichols* does not apply where a defendant "knowingly and intelligently waived his right to counsel" in connection with a misdemeanor, even if the conviction resulted in a term of imprisonment. *Id.*[5]

The Supreme Court in *Nichols* was even more explicit about using prior convictions and the lack of necessity for warning at the time of conviction about repercussions:

> Petitioner contends that, at a minimum, due process requires a misdemeanor defendant to be warned that his conviction might be used for enhancement purposes should the defendant later be convicted of another crime. No such requirement was suggested in *Scott,* and we believe with good reason. In the first place, a large number of misdemeanor convictions take place in police or justice courts which are not courts of record. Without a drastic change in the procedures of these courts, there would be no way to memorialize any such warning. Nor is it at all clear exactly how expansive the warning would have to be.... And a warning at the completely general level—that if he is brought back into court on another criminal charge, a defendant such as Nichols will be treated more harshly— would merely tell him what he must surely already know.

511 U.S. at 748.

From the record it appears that Latson did receive a "fair notice" about possible "court action." and, therefore, his waiver of June 27 did not violate the intelligent, knowing and voluntary standard. There is no constitutional right to a "clean slate" in sentencing proceedings, and, therefore, Latson's due process rights were not violated in that regard. Finally, even if the admissions made at the June 27 meeting were excluded from consideration, Latson's subsequent violations provide sufficient grounds to revoke probation.

---

**4.** The Supreme Court in *Nichols,* affirming a Sixth Circuit decision, held: "consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, valid under *Scott [v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979)] because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." 511 U.S. at 748–49.

**5.** The reasoning of *Logan* and *Nichols* was also relied on by a recent unpublished Sixth

Circuit case, *United States v. Tucker,* 48 Fed. Appx. 131 (2002). There the Court upheld consideration of a prior uncounseled misdemeanor conviction (resulting in a term of imprisonment) at a sentencing hearing for a subsequent crime. *Id* at 132. In *Tucker,* the Court affirmed that the waiver at the misdemeanor conviction had been valid relying on a presumption of regularity in state court proceedings, and the fact that Tucker had signed a written waiver, but admitted that he had not read it. *Id.*

## C. Rule 32.1 waivers need not be subject to a searching judicial inquiry before allowing defendants to proceed pro se or waive a hearing.

Latson makes a broader argument that this Court's mandate in *United States v. McDowell* [6] that judges make a searching inquiry before allowing pro se defendants to proceed should be extended to waivers of counsel in Rule 32.1 proceedings. Latson claims that without this protection, "lay persons, such as the probation officer involved in this case, will be the sole judges of the validity of such waivers."

Latson does not support his argument with any applicable statutory or judicial citations, and a review of relevant caselaw and the federal rules offers no support for his position. It should also be noted that the waiver in this case was not without judicial oversight. Latson's waiver of June 27 was reviewed by the district court before it was accepted.[7] Latson also had a right to challenge the waiver and any other facts relating to his revocation at his August 2002 hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (holding that a probationer is entitled to a preliminary and final revocation hearing).

Rule 32.1 of the Federal Rules of Criminal Procedure, which guides revocation or modification of probation or supervised release, explicitly provides that the right to counsel and a hearing can be waived. This rule was amended on December 1, 2002. The pre-amendment version was not explicit about the possibility of waiver in the circumstances of a modification under R. 32.1(b). It stated, "[a] hearing and assistance of counsel are required before the terms or conditions of probation supervised release can be modified...." The amended version R. 32.1(c)(1) states that before modifying probation "the court must hold a hearing at which the person has a right to counsel." However, R. 32.1(c)(2) provides exceptions and states "[a] hearing is not required if: (A) the person waives the hearing."

The Advisory Committee Notes to the 2002 amendments explains the change:

> Rule 32.1(c)(2)(A) permits the person to waive a hearing to modify the conditions of probation or supervised release. Although that language is new to the rule, the Committee believes that it reflects current practice.

■ Although this issue has not been addressed by the Sixth Circuit, the Ninth Circuit in *United States v. Stocks* rejected an appeal nearly identical to Latson's, under the pre-amendment R.32.1(b). 104 F.3d 308 (9th Cir.1997), *cert. denied.* 522 U.S. 904, 118 S.Ct. 259, 139 L.Ed.2d 186 (1997). *Stocks* examined the policy and due process concerns underlying the Supreme Court's caselaw:

> In sum, the Supreme Court developed in *Mempa [v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) ]. *Morrissey [v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ], and *Gag-*

---

6. In *McDowell* the Court made a specific finding that the defendant did knowingly waive his right to counsel and was competent to represent himself. 814 F.2d at 251. However, the Court using its "supervisory powers" in order "to avoid future appeals of a similar nature," directed courts to follow the model inquiry found in 1 BENCH BOOK FOR UNITED STATES DISTRICT JUDGES 1.02.–2 (3d ed.1986) before allowing a defendant to proceed pro se.

7. This is in contrast to the facts of *United States v. Lewis*, 142 F.3d 437 (Table), 1998 WL 58145 (6th Cir.1998) (unpublished), cited by Latson. In *Lewis*, the Court held that it was not a violation of probation when a probationer violates only the term as modified by the probation officer, when that modification was not approved by the district court. *Id.* at 3.

*non* a core of constitutionally-protected rights tailored to the probation and parole contexts. These rights arose out of a recognition of two related interests: a probationer's interest in receiving assistance of counsel when probation-related proceedings are intertwined with (re)-sentencing (*Mempa*), and, more generally, a probationer's and parolee's due process interest in remaining free from the restrictions on liberty that are characteristically imposed as part of a probationary or parole term (*Morrissey* and *Gagnon*).

104 F.3d at 311. The court in *Stocks* did re-affirm the requirement that any waiver be subject to "the knowing, intelligent and voluntary standard." *Id.* at 312.[8] They concluded by addressing the argument raised by Latson:

> On this appeal, Stocks argues that the waiver was defective because of its definition of "assistance of counsel." The argument is, in effect, that before waiving counsel at a hearing Stocks must have counsel to advise him whether such a waiver is in his interest. Nothing in the Constitution or any statute or rule requires such a result.

*Id.* at 312. Every probationer retains a right to a hearing and counsel at every step in the process, but that right can be waived. *See United States v. Mezzanatto,* 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) ("The provisions of [the Rules of Criminal Procedure] are presumptively waivable...."). Like the defendant in *Stocks*, Latson contends a waiver of counsel without the assistance of counsel (or a hearing before a judge) is not valid, and waiver of a hearing, without a hearing (or assistance of counsel) on that waiver is not valid. Nothing in case law, statutes or rules supports such a proposition. The only case cited by Latson is *McDowell*, which involved a pro se defendant representing himself at trial. However this Court has previously recognized the distinction between probation revocation hearings and a formal trial. Due process rights do apply in a "revocation of probation" setting because the loss of freedom "constitutes a deprivation of a defendant's liberty." *See United States v. Dodson,* 25 F.3d 385, 388 (6th Cir.1994) (citations omitted). However, it "is not part of a criminal prosecution and thus the full panoply of due process protections accorded the defendant in such a proceeding do not apply to a revocation proceeding." *Id.* Latson essentially argues that the distinction between formal criminal prosecutions and revocation hearings should not exist, and seeks to extend the "full panoply" of due process rights to probation revocations and to probation modifications. However, the facts of this case and the relevant caselaw do not demand such an extension.

Finally, as the facts in *Stocks* and Latson indicate, even if a modification is made through an improper waiver, the district court still retains the responsibility to review any modification agreement even if a hearing is waived, and consider the propriety of that waiver if it plays any role in a subsequent revocation hearing.

---

**8.** The waiver and modification in *Stocks* was done under similar circumstances as Latson's, at a meeting with a probation officer, and later approved, without a separate hearing or assistance of counsel by the district court. *See Stocks,* 104 F.3d at 309. Unlike in this case, the district court in *Stocks* did make a separate finding at the revocation hearing that the uncounseled waiver "had been knowing, voluntary and intelligent." *Id.* at 310. It appears the judge did not make a separate finding in Latson's case because the revocation did not rest on violations of the modified terms.

### III. CONCLUSION

For the foregoing reasons the district court revocation of Appellant's probation is **affirmed.**