UNITED STATES of America, Plaintiff,

v.

Ahbrae Rynell JONES, Defendant.

UNITED STATES of America, Plaintiff,

v.

Danny Lee MIKULA, Defendant.

Nos. LR–CR–90–242(2), LR–CR–96–165.

United States District Court,
E.D. Arkansas,
Western Division.

March 4, 1997.

Leslie Borgognoni, Federal Public Defender's Office, Little Rock, AR, for Danny Lee Mikula.

Jerome Kearney, Federal Public Defender's Office, Little Rock, AR, for Ahbrae Rynell Jones.

Michael Johnson, Assistant U.S. Attorney, Little Rock, AR, for U.S.

### ORDER

EISELE, District Judge.

Before the Court are Defendants' Motions to Dismiss Petition to Revoke Supervised Release and Requests for Declaratory Judgment With an Injunction. The United States has responded to the Motions, and Defendants have filed replies to those responses. The Court has reviewed the submissions of the parties and conducted a hearing on the Motions on the record and in open court on March 3, 1997. For the reasons set forth during that hearing and in this Order, the Court will grant in part and deny in part Defendants' Motions.

2. Docket No. 6.

# I

## *Background*

### A. Defendant Ahbrae Jones

On December 14, 1990, Defendant Ahbrae Jones entered a plea of guilty to an armed-robbery charge. On February 6, 1991, the Court sentenced Mr. Jones to 60 months in the Bureau of Prisons and to 36 months of supervised release, including drug screens every 60 days. Mr. Jones was released from prison and began his supervised release on July 15, 1995.

On July 15, 1996, according to Mr. Jones, his probation officer, Daniel Webster, required Mr. Jones to agree to modifications of the conditions of his supervised release to include participation in a drug-abuse program On June 4, 1996, Mr. Jones signed a waiver of rights to a hearing on the modification and to the appointment of counsel. The waiver read, in relevant part, as follows:

> I have been advised and understand that I am entitled by law to a hearing and assistance of counsel before any unfavorable change may be made in my Conditions of Probation and Supervised Release or my period of supervision being extended. By "assistance of counsel" I understand that I have the right to be represented at the hearing by counsel of my own choosing if I am able to retain counsel. I also understand that I have the right to request the court to appoint counsel to represent me at such a hearing at no cost to myself if I am not able to retain counsel of my own choosing.
>
> I hereby voluntarily waive my statutory right to a hearing and to assistance of counsel....

Counsel was not involved in the waiver, and no Court has reviewed the waiver. Mr. Webster signed the waiver as a witness. According to Mr. Jones, the probation officer required Mr. Jones to comply with the modification immediately. On July 15, 1996, the Court approved the modification.[1]

Mr. Jones did not complete the drug-treatment program and stopped attending after seven sessions. His last session was on July 30, 1996. Based upon this failure to complete the program and on two alleged drug uses in October, Mr. Webster filed a petition to revoke Mr. Jones' supervised release. On February 18, 1997, Mr. Jones filed his Motion to Dismiss Petition to Revoke Supervised Release and Request for Declaratory Judgment with an Injunction.

### B. Defendant Danny Mikula

On April 16, 1990, in the Eastern District of Texas, Danny Mikula was sentenced to 41 months in the Bureau of Prisons and three years of supervised release, including participation in a substance-abuse program. His supervised release began on November 23, 1994, and jurisdiction was transferred to this Court on July 25, 1996.

According to Mr. Mikula, he attended a substance-abuse program at Serenity Park in Little Rock from April 17, 1995, until July 26, 1995, completing the program Moreover, from March 25, 1996, until May 31, 1996, Mr. Mikula attended a substance-abuse and mental-health program through the Veterans' Administration and completed that program. There was indication during the March 3 hearing that Mr. Mikula has undergone other drug-abuse and/or mental-health treatment programs as well.

According to Mr. Mikula, the probation office advised him that two urine samples—on July 2, 1996, and August 27, 1996—had tested positive. Based upon those tests, on September 13, 1996, his probation officer, Daryl Bailey, advised Mr. Mikula to stipulate to modifications of the conditions of his supervised release to include an additional 120 days in a community correctional center. According to Mr. Mikula, the probation office advised him that the Court would revoke his supervised release and imprison him until November 22, 1997, if he refused to stipulate to the proposed modifications. Mr. Mikula signed a waiver of rights to a hearing and to appointment of counsel That form reads just as Mr. Jones' waiver. Neither a magistrate

---

1. During the March 3 hearing, the Court indicated that, if it is true that Mr. Jones was required to comply with the modifications of the conditions of his supervised release before the Court ordered those modifications, an error had occurred.

judge nor the Court reviewed the waiver of rights, and Mr. Bailey signed the waiver as witness. The Court approved the modification on September 30, 1996.

Pursuant to the Court's order, Mr. Mikula entered St. Francis House on November 5, 1996, and was discharged ten days later, on November 15, 1996, as a program failure. Mr. Bailey subsequently filed a petition to revoke Mr. Mikula's supervised release. On February 21, 1997, Mr. Mikula filed his Motion to Dismiss Petition to Revoke Supervised Release and Request for Declaratory Judgment with an Injunction.

## C. The Motions

Mr. Jones and Mr. Mikula by their Motions essentially make three requests: (1) that the Court dismiss the petitions to revoke Mr. Jones' and Mr. Mikula's supervised releases, (2) that the Court declare the process employed by the U.S. Probation Office for the Eastern District of Arkansas violative of due process of law, and (3) that the Court enjoin the probation office from further employing the described practices and policies. Mr. Mikula also requests that the Court set aside its order modifying the conditions of his supervised release.[2]

## II

### *Whether the Probation Office May File a Petition to Revoke*

### A. Argument

Mr. Jones and Mr. Mikula argue that the probation office's practice of petitioning the Court for revocations of supervised releases exceeds the authority granted by statute to that office and constitutes the unauthorized practice of law. They cite to the Court 18 U.S.C. § 3603. Section 3603 provides, *inter alia*, that

[a] probation officer shall—

. . .

(8)(B) immediately report any violation of the conditions of release to the court

and the Attorney–General or his designee; and

(9) perform any other duty that the court may designate.

Mr. Jones and Mr. Mikula also point to § 7B1.2 of the United States Sentencing Guidelines, which section requires probation officers to report to the Court any alleged violations. Mr. Jones and Mr. Mikula argue that the plain language of these directives limits the probation office to *reporting* violations and that actually *petitioning* the Court exceeds the office's authority. Mr. Mikula and Mr. Jones contend that only the U.S. Attorney should file pleadings to revoke or modify conditions of probation or supervised release.

The Government responds that Mr. Jones' and Mr. Mikula's argument is misplaced. The Government asserts that Executive–Branch involvement in the process is evidenced by the fact that the petitions for revocation indicate that the probation office consulted with the U.S. Attorney's Office and that the U.S. Attorney's Office agreed that revocation was appropriate. According to the Government, this fact reduces Mr. Jones' and Mr. Mikula's argument to the proposition that the wrong individual signed the petition. Finally, the Government argues that, as long as the Court makes the final decision, the probation office should be allowed to make appropriate recommendations.

Mr. Jones and Mr. Mikula also submit that the filing of petitions by the probation office constitutes the unauthorized practice of law. They submit a letter from Professor Howard W. Brill of the University of Arkansas School of Law in support of their argument. The Government makes no response to this argument.

### B. Discussion

The Court agrees with Defendants and, therefore, will dismiss the instant petitions for revocation.[3] The Court has neither re-

---

**2.** The Court has jurisdiction over these matters because it had jurisdiction over the revocation proceeding that gave rise to the Motions. *See United States v. Stocks*, 104 F.3d 308, 1997 WL 7559 (9th Cir.).

**3.** When the Court indicated its opinion regarding this issue at the March 3 hearing, the Assistant United States Attorney moved for revocation of the Defendants' supervised releases, and the

ceived nor discovered any case dealing with this question. Defendants cite to the Court *United States v. Mohammad*, 53 F.3d 1426 (7th Cir.1995), and *United States v. Sifuentez*, 30 F.3d 1047 (9th Cir.), *cert. denied*, 513 U.S. 1102, 115 S.Ct. 777, 130 L.Ed.2d 672 (1995), in support of their proposition that there are limits to the duties that a probation officer may assume. In *Mohammad*, the United States Court of Appeals for the Seventh Circuit held that "a court abdicates its judicial responsibility when it authorizes a probation officer to determine the manner of restitution." *Mohammad*, 53 F.3d at 1438. *See also United States v. Johnson*, 48 F.3d 806, 808 (4th Cir.1995) (stating that no statutory provision assigns a probation officer any judicial function and that sentencing is a core judicial function). In *Sifuentez*, the United States Court of Appeals for the Ninth Circuit held that the recommendations of a probation officer regarding a request for departure from the guidelines were appropriate. The Ninth Circuit Court of Appeals commented, though, as follows:

> This is not to say that there are no limits on what a probation officer may write in her presentence report as part of her discussion of facts relevant to the departure decision or in support of any recommendations she makes to the court. Certain language may stray sufficiently far from the essential purpose of analyzing the departure grounds to constitute excessive, and impermissible, advocacy or argument. We do not think the language here went so far.

*Sifuentez*, 30 F.3d at 1049.

Neither of these cases is particularly helpful, and the propositions for which they are cited are obvious. The cases indicate that there are limits as to what lengths the probation office may go to influence the Court, but they do not draw any clear lines or provide any factors to help the Court determine those limits. In this case, *the Court* and not the probation office ordered the modifications. *See United States v. Raddatz*, 447 U.S. 667, 683, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424, *reh'g denied*, 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980) (holding certain delegations to magistrate judges does

not violate Article III where ultimate decision is made by district court), *quoted in Johnson*, 48 F.3d at 808. This is not a situation where the probation office has assumed judicial responsibilities.

■ It is clear that the practice employed by the probation office in the Eastern District of Arkansas in petitioning the Court is followed in a variety of other locales. *See, e.g., United States v. Card*, 96 F.3d 1439 (4th Cir.1996); *United States v. Conliffe*, 87 F.3d 1309 (4th Cir.1996); *United States v. Kindred*, 918 F.2d 485, 487 (5th Cir.1990); *United States v. Young*, 756 F.2d 64 (8th Cir. 1985); *United States v. Schwartz*, 881 F.Supp. 159, 161 (E.D.Pa.1995) (all noting the filing of petition by probation office). Nevertheless, the plain language of the statutes cited to the Court clearly supports Defendants' position that such petitioning is inappropriate. Those statutes provide for the *reporting* of violations by the probation office, not the *petitioning* of the Court for action. Because the applicable statute requires that violations be reported not only to the Court but also to the U.S. Attorney, it is reasonable to assume that the statute envisions petitions for revocation filed by the Government. It is clear to the Court, moreover, that, when probation officers-neither lawyers nor *pro se* litigants—petition the Court, they are practicing law and that such practice is unauthorized and illegal. Finally, as a matter of policy, allowing the probation office to petition the Court seems to magnify the unfortunate tendency of probation officers under the Sentencing Guidelines regime to be advocates not for their probationers but for "the People." That job, it seems clear to this Court, belongs to the United States Attorney. Mr. Jones' and Mr. Mikula's argument is not, therefore, a quibble about a signature on a form. In this case, the Court's ruling should remind probation officers of their proper roles.

### III

### *Whether the Modifications Were Proper Pursuant to Rule 32.1*

**A. Argument**

Rule 32.1(b) of the Federal Rules of Criminal Procedure provides as follows:

Court continued with the hearing, considering

the motions made by the Government.

**Modification of Probation or Supervised Release.** A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation of supervised relief upon the person's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected. An extension of the term of probation or supervised release is not favorable to the person for the purposes of this rule.

Mr. Jones and Mr. Mikula argue that the modifications of their supervised releases were not favorable to them and that, therefore, they were entitled to hearings and to counsel before the modifications could be effected. Mr. Jones and Mr. Mikula then argue that their waivers of these rights were improperly taken. They point the Court to 18 U.S.C. § 3006A. Section 3006A(a)(1) provides that "[r]epresentation shall be provided for any financially eligible person who ... (E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release...." Section 3006A(b) provides that "[i]n every case in which a person entitled to representation under a plan approved under subsection (a) appears without counsel, the United States magistrate or the court shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel...." Mr. Jones and Mr. Mikula argue that they were entitled to have the Court—and not merely a probation officer—advise them of their rights. At that point, they submit, the probation officer was an advocate, and due process requires an independent advisement.

## B. Discussion

It is clear that Mr. Jones and Mr. Mikula were entitled to hearings with the assistance of counsel before the modifications of their supervised releases. *See* Fed. R.Crim. P. 32.1; *United States v. Rorex,* 737 F.2d 753 (8th Cir.1984). These rights are expressly granted by statute, and the Advisory Committee Notes to Rule 32.1 indicate that "[s]ince *Morrissey v. Brewer* and *Gagnon v. Scarpelli,* it is clear that a probationer can no longer be denied due process in reliance on the dictum *Escoe v. Zerbst,* 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566 (1935), that probation is an 'act of grace.'" Fed. R.Crim.P. 32.1, Advisory Committee Notes, quoted in *Stocks,* 104 F.3d 308, 312.

There is nothing, however, to suggest that the rights at issue are not subject to waiver, and it is the conclusion of the Court that those rights may be waived. *See generally United States v. Mezzanatto,* 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), *quoted in Stocks,* 104 F.3d at 310–11. In *United States v. Stocks,* the defendant challenged his waiver of the very rights asserted by Defendants in the instant matter. The Court of Appeals for the Ninth Circuit traced the development of the rights embodied in Rule 32.1 and identified two primary interests derived from Supreme Court jurisprudence: "a probationer's interest in being represented at the time sentence is imposed and a probationer's liberty interest in remaining free from probation-related restrictions." *Stocks,* 104 F.3d 308, 312. The court held that waiver of the rights at issue had to be knowing, intelligent, and voluntary. Thus, the real issue is whether the probation officer may take a waiver of rights or whether the Court or a magistrate judge must do so.

■ It is the conclusion of the Court that due process does not mandate a hearing or the warning of a judicial officer for a probationer or supervisee to waive his rights to a hearing and to counsel before modifications are effected in the conditions of his probation or supervised release. In *United States v. Chambliss,* the United States Court of Appeals for the Eleventh Circuit held that due process does not require a *hearing* to determine whether the waiver of counsel and a hearing regarding the modification of probation conditions was knowing and voluntary, and that holding makes sense. *See* 766 F.2d 1520, 1521 (11th Cir.1985). *See also United States v. Dyer,* 620 F.Supp. 51 (E.D.Wis. 1985) (following *Chambliss* where probation officer took waiver of rights); *Stocks,* 104

F.3d 308, 312–13 (finding nothing in law to require counsel for defendant before acceptance of waiver of counsel at hearing). Moreover, in an unpublished opinion, *United States v. Barquero*, 57 F.3d 1078, 1995 WL 338809 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995), the Court of Appeals for the Ninth Circuit held that the 32.1(b) right to counsel is limited to presence and assistance of counsel *if the* right to a hearing is invoked. The Court finds that analysis persuasive.

During the March 3 hearing, counsel for Mr. Jones noted to the Court the procedure followed in at least a few other districts. In the noted districts, the Federal Public Defenders Office is contacted when "unfavorable" modifications of probation or supervised release are proposed and waivers are requested. The Court noted that, while such a procedure might be wise as a matter of policy, it is not mandated by due process. Thus, while the entire Court might adopt that procedure, the Court will not require it as a matter of constitutional law.

## IV

### *Whether the Waivers Were Knowing and Intelligent*

■ The Court need not confront whether Defendants' waivers were knowing, voluntary, and intelligent. *See Stocks,* 104 F.3d 308, 312. It is the conclusion of the Court that these issues are moot in two respects. First of all, assuming that the waivers were not properly given and that Defendants entered their rehab programs, if a defendant then wanted out of the program on the ground that he did not properly waive his rights to hearing and counsel, he should have petitioned the Court and asserted the invalidity of his waiver then. Having failed to complete the program, he is in blatant violation of the Court's order that the conditions of his supervised release be modified. One must recall that, even though the modification was the probation officer's idea, it re-

sults from the Court's order. The defendant, therefore, cannot refuse to comply with that order on his *own* determination that the waiver was bad. Thus, at this point, the validity of the waiver is irrelevant, and Defendants have violated orders of the Court. Second, the issue is moot in that both Defendants committed violations of the conditions of their supervised releases that had nothing to do with the modifications with which the relevant waivers were concerned. For both reasons, the Court will not address the validity of the waivers.[4]

## V

### *Conclusion*

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss Petition to Revoke Supervised Release and Requests for Declaratory Judgment With an Injunction[5] be, and they are hereby, GRANTED IN PART and DENIED IN PART as provided by this Order.

The Court directs the United States Probation Office to cease filing petitions for modification of the conditions of probation or supervised release and petitions for revocation of probation or supervised release. In the future, such petitions should be filed by the United States Attorney's Office.

---

4. In the March 3 hearing, the Court went on to consider the motions for revocation submitted orally by the Assistant U.S. Attorney. A separate order addressing the resolution of those issues will be forthcoming.

5. Docket No. —— in LR–CR–92–242(2) and Docket No. —— in LR–CR–96–165.