**UNITED STATES of America,**

v.

**William R. BURNETTE.**

**UNITED STATES of America,**

v.

**William R. BURNETTE.**

CR. Nos. 91–8–N, 91–12–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 14, 1997.

James Eldon Wilson, U.S. Attorney, Terry F. Moorer, Asst. U.S. Atty., for Plaintiff.

Christine Freeman, Federal Public Defender, Montgomery, AL, for Defendant.

1. Burnette has also challenged the practice of some judges on this court of having *ex parte* meetings with probation officers to discuss, among other things, whether revocation proceedings should be initiated. Because this alleged practice is not engaged in by all judges, and, more specifically, was not engaged in by the undersigned judge either in general or in connection with Burnette, the challenge to the practice is not properly before the court. Burnette has no grounds to complain about a practice which has not affected him. The challenge should, instead, be presented by an affected defendant to a judge who has engaged in the practice.

2. The probation officer actually made two recommendations in the revocation petitions. First,

*ORDER*

MYRON H. THOMPSON, Chief Judge.

In motions to dismiss filed in these two criminal cases, defendant William R. Burnette challenges the procedure of this court that allows a probation officer to file a "petition" for initiation of revocation proceedings and issuance of an arrest warrant or a summons based on a defendant's alleged violation of a condition of supervised release.[1] The probation officer, according to Burnette, should be allowed to file only a "report" of the alleged violation, and not to recommend or suggest what course of action the court should take based on the alleged violation, a role which, Burnette says, belongs to only the United States Attorney.[2] Burnette contends that, when a probation officer files a revocation petition, her conduct is impermissible for the following reasons: (1) it exceeds the scope of authority given to her by 18 U.S.C.A. § 3603; (2) it constitutes the unauthorized practice of law; (3) it violates the due process clause of the fifth amendment to the United States Constitution; and (4) it violates the Separation of Powers Doctrine implicit in the Constitution. Burnette further contends that (5) even if the probation officer's conduct is permissible under law, the court, in the exercise of its supervisory authority over the Probation Office, should still bar it. For the reasons that follow, Burnette's motions will be denied.

I.

The facts in this case are essentially undisputed and are as follows:

she recommended that revocation proceedings be initiated against Burnette, and, second, she recommended that Burnette's supervised release actually be revoked. It does not appear that Burnette is challenging the Probation Office's practice of making the latter recommendation. In any event, this challenge would be meritless as well. For the reasons given later in this order, the probation officer acts properly when she make her position known to the court, and the court does not act on the recommendation until it has heard all the evidence, and, in particular, any evidence that the defendant desires to submit.

*July 10, 1991:* Burnette entered pleas in two criminal cases. In criminal action no. 91–8–N, he pleaded guilty to one count of making a false statement, in violation of 18 U.S.C.A. § 1001, for which he was sentenced to 57 months of imprisonment. In criminal action no. 91–12–N, he pleaded guilty to one count of a convicted felon knowingly possessing firearms transported in interstate commerce, in violation of 18 U.S.C.A. § 922(g)(1), for which he was sentenced to 57 months of imprisonment. In each case, he was also placed on three years of supervised release pursuant to 18 U.S.C.A. § 3583. His sentences were to be served concurrently.

*On or about August 29, 1995:* Burnette was released from prison and was placed on supervised release. He was placed under the supervision of the United States Probation Office for the Middle District of Alabama.

*June 28, 1996:* In accordance with the policy and practice of the Probation Office, Burnette's probation officer filed a petition in each criminal case requesting the initiation of revocation proceedings and issuance of an arrest warrant for Burnette. The petitions were based on information that Burnette had been arrested by the Montgomery Police Department and charged with first degree theft of property. Although each petition had a place for the supervising judge to indicate with a "check mark" which of four choices he desired—(1) no action be taken; (2) a warrant be issued; (3) a summons be issued; or (4) "other" action be taken—the probation officer had already checked the space for issuance of the warrant. On that same date,

after reviewing the petitions, the supervising judge agreed with the probation officer that a warrant should issue in each case, and the supervising judge executed the part of each petition authorizing the issuance of the warrant.

*August 22, 1997:* A year later, following Burnette's release from custody by the Montgomery City Police Department, he filed a motion in each case challenging the filing of the petitions.

*September 18, 1997:* A hearing was held on the motions.[3]

## II.

Burnette's motions must be considered not only within the statutory framework that governs the conduct of probation officers, but also the day-to-day practical framework within which probation officers for this court actually work.

### A. Statutory Framework

A court's power and obligation to impose a term of supervised release after a sentence of imprisonment are governed by 18 U.S.C.A. § 3583.[4] The statute gives the court the power to impose a term of supervised release, § 3583(a), as well as the power to terminate, extend, and revoke the term, and to modify its conditions, § 3583(e). To give effect to this power, § 3606 of Title 18 of the United States Code authorizes a probation officer to arrest, without warrant, a defendant for whom there is probable cause to suspect that he has violated the conditions of his supervision.[5] This section also authorizes

---

**3.** Because Burnette's motions challenged a uniform practice of the court, the motions were set for hearing before all three active judges of the court. Chief Judge Thompson and Judge DeMent presided at the September 18 hearing, and Judge Albritton reviewed a transcript of the hearing. However, the three Judges now believe that the matter can, and should, be resolved by Judge Thompson, the supervising judge to whom the revocation petitions were initially presented.

**4.** In 1984, Congress replaced parole with supervised release. As explained in a Senate Report, the new law permitted

"the court, in imposing a term of imprisonment for a felony or a misdemeanor, to include as part of the sentence a requirement that the defendant serve a term of supervised release

after he has served the term of imprisonment. Unlike current parole law, the question whether the defendant will be supervised following his term of imprisonment is dependent on whether the judge concludes that he needs supervision, rather than on the question whether a particular amount of his term of imprisonment remains. The term of supervised release would be a separate part of the defendant's sentence, rather than being the end of the term of imprisonment."

S.Rep. No. 98–225, at 123 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3306.

**5.** Section 3606 provides:

"If there is probable cause to believe that a probationer or a person on supervised release

a court to issue a warrant for his arrest and return.

Any revocation of a defendant's supervised release or modification of his conditions must be made in accordance with Rule 32.1 of the Federal Rules of Criminal Procedure. This Rule provides for a prompt preliminary hearing to be held for any person in custody on allegations of a violation of supervised release to determine if there is probable cause to hold the person for a revocation hearing. Rule 32.1(a)(1). A full hearing must then be held before there can be any revocation of release or modification of conditions, Rule 32.1(b), and at that hearing, the defendant must be provided with written notice of the alleged violation, notice of his right to be represented by counsel, disclosure of the evidence against him, an opportunity to appear to present evidence in his own behalf, and an opportunity to question adverse witnesses, Rule 32.1(a)(2).

Beyond the court's role in imposing and modifying the conditions of a defendant's supervised release, 18 U.S.C.A. § 3601 directs that any person placed on supervised release shall be supervised by a probation officer, as is warranted by the conditions imposed by the sentencing court. Probation officers are appointed, and can be removed, by the United States District Court for the district in which the court sits. 18 U.S.C.A. § 3602(a).

Congress has imposed a number of obligations on probation officers, including that they shall keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of a person on supervised release and shall "report" his conduct and condition to the sentencing court. 18 U.S.C.A. § 3603(2).[6] The probation officer is also re-

has violated a condition of his probation or release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. A probation officer may make such an arrest wherever the probationer or releasee is found, and may make the arrest without a warrant. The court having supervision of the probationer or releasee, or, if there is no such court, the court last having supervision of the probationer or releasee, may issue a warrant for the arrest of a probationer or releasee for violation of a condition of release, and a probation officer or United States marshal may execute the warrant in the district in which the warrant was issued or in any district in which the probationer or releasee is found."

**6.** Section 3603 provides as follows:
"A probation officer shall—
(1) instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions;
(2) keep informed, to the degree required by the conditions specified by, the sentencing court, as to the conduct and condition of a probationer or a person on supervised release, who is under his supervision, and report his conduct and condition to the sentencing court;
(3) use all suitable methods, not inconsistent with the conditions specified by the court, to aid a probationer or a person on supervised release who is under his supervision, and to bring about improvements in his conduct and condition;
(4) be responsible for the supervision of any probationer or a person on supervised release who is known to be within the judicial district;

(5) keep a record of his work, and make such reports to the Director of the Administrative Office of the United States Courts as the Director may require;
(6) upon request of the Attorney General or his designee, assist in the supervision of and furnish information about, a person within the custody of the Attorney General while on work release, furlough, or other authorized release from his regular place of confinement, or while in prerelease custody pursuant to the provisions of section 3624(c);
(7) keep informed concerning the conduct, condition, and compliance with any condition of probation, including the payment of a fine or restitution of each probationer under his supervision and report thereon to the court placing such person on probation and report to the court any failure of a probationer under his supervision to pay a fine in default within thirty days after notification that it is in default so that the court may determine whether probation should be revoked;
(8) (A) when directed by the court, and to the degree required by the regimen of care or treatment ordered by the court as a condition of release, keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of section 4243 or 4246 of this title, and report such person's conduct and condition to the court ordering release and to the Attorney General or his designee; and
(B) immediately report any violation of the conditions of release to the court and the Attorney General or his designee;
(9) if approved by the district court, be authorized to carry firearms under such rules and regulations as the Director of the Administra-

quired to "perform any other duty that the court may designate." § 3603(10).

Under this statutory framework, therefore, the probation officer is under a continuing obligation to keep the court informed of the activities of persons under its supervision. She is essentially an investigative and supervisory "arm of the court," *United States v. Johnson,* 935 F.2d 47, 49 (4th Cir.1991), or, as another court has put it, she serves as the "eyes and ears" of the court. *Schiff v. Dorsey,* 877 F.Supp. 73, 78 (D.Conn.1994). There is a close working relationship between the probation officer and the sentencing court.

### B. Practical Framework

The court turns next to the practical framework within which probation officers work in this court. A full grasp of this framework is particularly important because Burnette is challenging not the statutory framework that governs supervised release, but rather how, in practice, this court initiates proceedings for revocation of such release. Indeed, Burnette contends, among other things, that this court's practice violates the statutory framework.

To fulfill its statutory reporting obligations, the Probation Office for this court has adopted and generally follows the guidelines set forth in *Supervision of Federal Offenders,* a monograph published by the Probation and Pretrial Services Division of the Administrative Office of the United States Courts. This monograph identifies conduct that must be reported to the supervising court, as well as other conduct that should be reported, and describes a standard set of procedures for carrying out the reporting. The procedures for reporting involve the completion and submission to the court of a series of forms, identified as probation forms 12A (report on offender under supervision), 12B (request for modifying the conditions or terms of supervision with consent of the offender), and 12C (petition for warrant or summons for offender under supervision).

From the monograph and from the evidence presented on this issue, it appears that the Probation Office for this court follows two different procedures in the delivery of these forms to the court, depending on the action recommended by the probation officer. Form 12B (request for modification of conditions of supervised release with the consent of the defendant) and form 12C (recommendation for revocation of supervised release) are filed with the clerk of the court and docketed as part of the case file. The clerk's office then delivers the form to the supervising judge for his or her review and action. Form 12A (recommendation that no action be taken) is delivered to the clerk's office, but it is not docketed as part of the case file. The clerk's office then delivers the form to the judge for his or her review and action. Form 12A is, however, filed and docketed if the judge decides that some official action—for example, initiation of revocation proceedings or modification of conditions—should be taken. There can be some variation in these procedures, but it is only slight.

Irrespective of which form is used, the forms are all designed similarly, and the steps that follow the delivery of the form are the same. After the form is delivered to the supervising judge by the clerk's office, he or she reviews the information pertaining to an alleged violation and the probation officer's recommendation, both of which are contained on the first part of the form. The second part of the form then contains a number of choices (one of which is to be checked for appropriate court action) and a place for the court to execute the form. Sometimes the probation officer has already "checked off" one of the choices, and sometimes the probation officer leaves all choices blank. In all instances, however, the court makes an independent selection—including "x'ing out," if necessary, the probation officer's choice and making a separate choice—and indicates on the second part of the form what action is to be taken.

After the supervising judge reviews the form and completes its second part, the form is returned to the clerk's office. If the judge directs an action, irrespective of what form is used, the second part of the form is docketed

tive Office of the United States Courts may prescribe; and

(10) perform any other duty that the court may designate."

as a separate part of the case file. If the judge directs that no action be taken, forms 12B and 12C remain part of the case file, but no further action is taken; form 12A, if the judge agrees that no action should be taken, is never entered as part of the case file and is returned to the probation officer.

If the court directs that action be taken, a hearing is then held pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. At the hearing, the United States Attorney prosecutes the petition, that is, calls witnesses and presents evidence in support of the allegations of violation in the petitions. The probation officer sits separately from the United States Attorney, and her participation in the guilt-or-innocence phase of the proceeding is limited to being a sworn witness, if she is called by either the United States Attorney, the defendant, or the court. At the hearing, the probation officer makes no presentation or recommendation as to the guilt or innocence of the defendant; only the defendant or his attorney and the United States Attorney argue the defendant's guilt or innocence. Other than initiating the revocation proceedings with the filing of the petition, and possibly serving as a witness, the probation officer plays no role in the determination of the defendant's guilt or innocence. The court determines guilt or innocence independently based solely on the evidence presented at the Rule 32.1 hearing.

Only if and when the defendant is found guilty of violating the conditions of supervised release does the probation officer resume a non-witness role—that of recommending to the court what action it should take in light of the finding of guilt and the defendant's past record. The fact that a defendant has been found guilty of a violation of the conditions of supervised release does not necessarily mean in all cases that his supervised release must be revoked. Absent a statutory provision directing in certain instances that supervised release must be revoked upon a violation, the court has discretion either to revoke supervised release or to continue the defendant on supervised release, albeit, in the court's discretion, with modified conditions.

### III.

With the above facts in mind, and against the above statutory and practical frameworks, the court now turns to Burnette's motions. Burnette's challenge is essentially to the use of form 12C; he maintains, as stated, that, in petitioning for the initiation of revocation proceedings, the probation officer took a position against him and thus assumed the role of an "advocate," a role reserved for the United States Attorney. Burnette contends that the probation officer's conduct (1) exceeded the scope of authority given to her by 18 U.S.C.A. § 3603, (2) constituted the unauthorized practice of law, (3) denied him due process of law, and (4) violated the Separation of Powers Doctrine.

In support of this argument, Burnette relies greatly on the case of *United States v. Jones,* 957 F.Supp. 1088 (E.D.Ark.1997). There, based on facts similar to those in this case, the court reached the conclusion that a probation officer who had filed a revocation petition had exceeded his role. Relying on § 3603, the court wrote that,

"[T]he the plain language of the statutes cited to the Court clearly supports Defendants' position that such petitioning is inappropriate. Those statutes provide for the reporting of violations by the probation office, not the petitioning of the Court for action. Because the applicable statute requires that violations be reported not only to the Court but also to the U.S. Attorney, it is reasonable to assume that the statute envisions petitions for revocation filed by the Government. It is clear to the Court, moreover, that, when probation officers—neither lawyers nor pro se litigants—petition the Court, they are practicing law and that such practice is unauthorized and illegal. Finally, as a matter of policy, allowing the probation office to petition the Court seems to magnify the unfortunate tendency of probation officers under the Sentencing Guidelines regime to be advocates not for their probationers but for 'the People.' That job, it seems clear to this Court, belongs to the United States Attorney. [Defendants'] argument is not, therefore, a quibble about a signature on a form. In this case, the Court's ruling should re-

mind probation officers of their proper roles."

957 F.Supp. at 1091. This court cannot agree with these comments, most of which are essentially conclusory.

### A.

■ Burnette contends, first, that a probation officer's filing of a court "petition" for revocation is outside the scope of duties given probation officers by law. He attempts to support this argument by drawing a definitional distinction between "report" (the term used in 18 U.S.C.A. § 3603) and "petition" (a term not used in § 3603), and arguing that only the former is proper under § 3603. This distinction cannot withstand close analysis. Burnette admits that, under § 3603, probation officers are authorized not only to submit "reports" of violations of supervised release, but also to "perform any other duty that the court may designate." Section 3603 is broad and open-ended. Thus, if a document labeled "report," but containing, pursuant to the probation officer's other designated duties, a recommendation for initiation of revocation proceedings, were filed with the court, Burnette would still take issue with the "report." Burnette's argument therefore must extend beyond labels; it must extend beyond whether the document filed with the court is labeled a "petition" or a "report." Rather, it is the information contained in the report—that is, the probation officer's suggestion or recommendation of a course of action—that lies at the heart of Burnette's challenge. The critical question for the court, therefore, is whether the information, that is, the recommendation of the probation officer, is proper information for inclusion in the report under § 3603. The court concludes, for very important reasons, that it is.

Burnette's own circumstances provide graphic and compelling reasons for the court having such information. The mere fact that conduct which, if true, would warrant revocation comes to the attention of a probation officer and is reported to the court does not, and should not, blindly lead to the initiation of revocation proceedings and the issuance of an arrest warrant. For example, if defendant's alleged conduct is already the subject of state criminal proceedings, the probation officer may recommend, and the federal court may agree, to take "no action," that is, to wait and see what happens in state court, if the underlying state charges are not serious and the probation officer has no fear that the defendant will flee; or, if the state charges are serious or there is some concern that the defendant may flee, the probation officer may recommend, and the court may agree, that a warrant be issued but only as a detainer pending resolution of the state proceedings. In either event, an immediate revocation hearing would not be held. It is often, but not always, the case that, if the state proceedings are reasonably timely and terminate in defendant's favor, the probation officer recommends, and this court agrees, that no further action should be taken as to defendant's supervised release as well. In Burnette's case, because the revocation petition was based on serious state charges, the court authorized an arrest warrant as a detainer so as to wait and see, initially, how state proceeding might turn out.

In other instances—in particular, instances where a defendant is charged with drug violations—the decision whether to authorize the issuance of an arrest warrant and initiate revocation proceedings may turn on whether the alleged violation is minor, whether it is a first or second alleged violation, and whether the defendant's conduct while under supervised release has otherwise been satisfactory. The probation officer may simply recommend that the defendant be continued on supervised release and given another chance.

In all these instances and others, the court needs not only the probable cause determination of the probation officer, but other additional information touching upon the issue of whether and how revocation proceedings should be initiated, information that would be within the easy reach of the probation officer. The court must also assimilate all this information and reach an informed decision, and, in performing this task, the court routinely turns to and relies on its probation officer, the professional Congress has given to the court to be its eyes and ears and to put together for the court that needed composite view of all the circumstances. This role is

not only a traditional one for a probation officer, it is critically important to the court's exercise of its Congressionally imposed supervisory authority over defendants.

In any event, the duties of probation officers are not limited to those listed in § 3603. Section 3606 of Title 18 also authorizes probation officers to arrest, without warrant, a defendant for whom there is probable cause to suspect that he has violated the conditions of his supervision. Therefore, even if the court were to accept Burnette's severely cabined reading of § 3603, probation officers would still be authorized, along with courts, to initiate criminal proceedings with an arrest. Burnette's effort to limit probation officers to merely information gatherers cannot succeed.

■ The court recognizes that a defendant would like, if possible, to be heard *before* an arrest warrant is issued and revocation proceedings are initiated. Indeed, the court understands Burnette to be arguing that, if the Probation Office is heard up front, then he should be heard up front as well. It may well be that allowing defendants to be heard before a determination is made on whether to initiate revocation proceedings would result in more informed decisions. However, this benefit does not mean that defendants should have a right to be heard up front. The court can think of many ways in which criminal procedures could be changed to benefit defendants, but the courts have never viewed a possible benefit as a right. A similar argument could be made that United States Attorneys and grand juries could make more informed decisions on whether to bring informations and indictments if a defendant had the right to know, before hand, that *ex parte* incriminating information was being presented against him and to appear and present, before charges are initiated, all the relevant information they wanted—in other words, to have a full trial before they are indicted or have informations filed against them. But no such right exists. The defendant is nonetheless given the process due under constitutional law because he is given the opportunity at a later, full trial to have the incriminating evidence presented in his presence to a neutral fact finder, and to respond to that evidence with his own evidence. Similarly here, in a revocation proceeding, the defendant is ultimately given a full opportunity to confront the evidence alleged in the petition, and to present his own evidence before a neutral fact finder. A defendant no more has a right to intercede and stave off the initiation of revocation proceedings than he does criminal proceedings.

### B.

■ Burnette contends, alternatively, that when the probation officer files a revocation petition with the court, she is engaged in the unauthorized practice of law under Alabama law. The court disagrees with Burnette again.

■ First, whether the probation officer here has engaged in the unauthorized practice of law under Alabama law is simply not controlling. The only controlling statutory issue is whether she has engaged in conduct authorized by *federal* law. As the court has already shown, the probation officer's conduct here fell solidly within that authorized by federal law.

In any event, even under state law, the probation officer here has not engaged in the unauthorized practice of law. The "Supreme Court [of Alabama] has not taken a doctrinaire, per se approach to [the authorized practice of law], but rather has on a case-by-case basis sought to determine what specific practices are properly reserved for lawyers in light of their special expertise and the public interest." *Alabama ex rel. Porter v. Dun & Bradstreet, Inc.*, 352 F.Supp. 1226, 1230 (N.D.Ala.1972), *aff'd on the basis of the district court opinion*, 472 F.2d 1049 (5th Cir.1973).[7] Burnette admits that the mere filing of papers with the court would not be improper, for § 3603 authorizes filing of "reports" with the court. Instead, according to Burnette, it is the adversarial nature of the petition that transforms it into an impermis-

---

**7.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

sible practice of law. However, probation officers are always taking positions in connection with court proceedings. When they make recommendations regarding sentencing, they take positions. When they make recommendations regarding conditions of supervised release and probation, they take positions. These roles, including that of filing revocation petitions, are traditional ones for probation officers, and have never been viewed as constituting the practice of law, authorized or unauthorized. They are not "specific practices ... properly reserved for lawyers in light of their special expertise and the public interest." *Id.*

Burnette suggests that, in filing a revocation petition, probation officers act as legal representatives of the government, a role reserved for the United States Attorney as a practicing lawyer. A probation officer is no more the legal representative of the government when she recommends action adverse to the defendant than she is a legal representative of the defendant when she recommends action favorable to the defendant. The fact that, at a point in time, a probation officer's position happens to align with that of one of the parties in a criminal proceeding does not mean she has lost her independence, but rather means that, having made an independent assessment, she believes one course of action is better than another, and it is by mere happenstance that that course corresponds with the position taken by one of the parties.

### C.

■ Burnette argues that the court's receipt of the revocation petition violated his right to due process of law. Burnette explains that "adverse evidence has been presented to the decision-making body in the defendant's absence and, as a result, the judge who receives that evidence becomes less than a neutral hearing body."[8] The court disagrees with this argument too.

■ First, the law is well established that, in general, *ex parte* communications between a probation officer and the court are "a commonplace and accepted practice uniformly upheld against constitutional challenges." *United States v. Johnson,* 935 F.2d 47, 49 (4th Cir.1991). This is so because probation officers are regarded as extensions of the court who provide the supervising judge with a wide range of information about the defendant for purposes of both sentencing and supervision. *Id.* The probation officer is essentially an "arm of the court." *Id.* And the appearance on the scene of the Sentencing Guidelines and the replacement of parole with supervised release have not changed this, to the extent that the traditional supervisory role of probation officers has merely been extended to cover both probationers and those on supervised release. *Id.* The practice that falls within the accepted tradition includes actual private meetings of probation officers with the court, for such meetings by the court with its staff are not, in general, *ex parte.*[9] Here, the court has not gone nearly that far, for it has only accepted a paper filing. The acceptance of a filing does not violate due process.

Indeed, it is doubtful whether the mere acceptance of a filing containing adverse information from anyone would constitute an *ex parte* communication. For after the probation officer has filed the petition, the court has reviewed it, and, if any revocation proceeding is authorized by the court, the petition has been served on the defendant, the defendant then has the same information that the court received. If this constitutes an *ex parte* communication, then any pleading which is received in a criminal or civil case and which contains adverse information would be an *ex parte* communication—which is surely not the case.

It is also telling that Burnette does not take issue with the probation officer's filing

8. Burnette's brief, filed on August 22, 1997, at 4.

9. The court should not be understood to say that there are not any statutory or constitutional limits on the private contact a supervising judge may have with a probation officer. Indeed, the court recognizes that the Sentencing Guidelines

have introduced a new role for probation officers, that of fact finders for purposes of initial sentencing. Whether supervising judges should have *ex parte* meetings with probation officers regarding resolution of facts in the context of initial sentencing is not before this court.

of a "report" with the court as long as the report does not contain a recommendation or suggestion as to what action the court should take. But a recommendation, just as much as a report, can be adverse to a defendant. If the defendant should have a right to rebut the probation officer's adverse recommendation regarding the initiation of the revocation proceedings, he should also have the right to rebut how the underlying report of alleged facts and circumstances is presented; the court is unaware of any principled distinction that courts have drawn under due process law between whether the adverse information is in the form of a report or a recommendation, for in both instances the court will have received information adverse to the defendant, which is usually the trigger of due process. Indeed, this court is impressed much more by the underlying alleged facts and circumstances than it is by the probation officer's recommendation or suggestion of a course of action.

Burnette's complaint is not really that the probation officer has made a so-called *ex parte* communication with the court but rather that the court has initiated a revocation proceed and authorized issuance of an arrest warrant and summons without having first heard from him. As the court has explained already, this practice does not violate a defendant's right to due process of law, because the defendant ultimately has a right to a hearing in which evidence against him must be presented and in which he can present his own evidence.

### D.

■ Burnette finally contends that the challenged procedure violates the Separation of Powers Doctrine, which is derived from the tripartite governmental structure created by the United States Constitution. Under the doctrine, because the Constitution created three separate branches of government, and assigned to them different but interrelated powers, "branches should be kept separate in all cases in which they were not expressly blended, and the Constitution should be expounded to blend them no more than it affirmatively requires." *Myers v. United States,* 272 U.S. 52, 116, 47 S.Ct. 21,

25, 71 L.Ed. 160 (1926). This separation safeguards against the accumulation of excessive power in one branch of government, and thus avoids the tyranny that accompanies the accumulation of too much power. *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 960, 103 S.Ct. 2764, 2789, 77 L.Ed.2d 317 (1983) (Powell, J., concurring). So the spheres of power created by the Constitution for one branch should not be intruded upon by another branch unless specifically allowed by the Constitution.

Burnette rightly points out that the power to start a prosecution is a power reserved to the Executive Branch, *United States v. Cowan,* 524 F.2d 504, 509 (5th Cir.1975), and that it would be improper for the court or its agents to intrude on this power. This power is not implicated here, however. As Burnette admits, if the probation officer had filed a report without recommending the initiation of the revocation proceedings, the court could have properly initiated revocation proceedings on its own. Burnette, therefore, recognizes that the court has the authority to initiate such proceedings, because such authority resides within the court's *judicial powers* and is thus proper and does not run afoul of the Separation of Powers Doctrine. Because a probation officer is an arm, or agent, of the court, any participation by the probation officer in this process is proper as well.

The court recognizes that the thrust of Burnette's argument is his contention that the probation officer is really acting as an advocate, who has assumed a role more akin to that of a party to the proceeding. As discussed above, the probation officer is not acting as an advocate for the government when she files a petition with the court. She is merely fulfilling her statutory duty to report to the court. And the court is not beginning a prosecution with its decision to conduct a revocation hearing, but exercising a power firmly established in its sphere of authority—the power to supervise defendants under its supervision. Burnette's arguments that the filing of a petition by the probation officer, or the court's action in beginning a revocation violates the Separation of Powers Doctrine are without merit.

■ Burnette also appears to suggest that, in filing a petition, the probation officer

has usurped—or, at least, intruded upon—the role of the court. As shown, however, the recommendation of the probation officer for the initiation of revocation proceedings is only that: a recommendation. It is only the court that can, and must, decide what course of action to take. In making a recommendation, the probation officer has no more usurped, or intruded on, the authority of the court than has a defense lawyer when she makes a recommendation. The critical point, as the court often explains to defendants when they appear before the bench to enter guilty pleas based on an expected recommendation, is that the court does not have to follow the recommendation.

### IV.

Finally, the court turns to Burnette's contention that the court, in the exercise of its supervisory authority over the Probation Office, should still bar probation officers from filing revocation petitions. Because the court is of the opinion that the practice is not only proper, but greatly beneficial, the court declines to bar the practice.

### V.

For the foregoing reasons, it ORDERED that defendant William R. Burnette's motions to dismiss, filed on August 22, 1997, are denied.