# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1651

———————

United States of America,      *
       *
     Appellee,     *
       *    Appeal from the United States
   v.        *    District Court for the Eastern
       *    District of Missouri.
Frederick Ahlemeier, III,    *
       *
     Appellant.     *

———————

Submitted: September 14, 2004
Filed: December 10, 2004 (corrected 12/16/04)

———————

Before BYE, BOWMAN, and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

## I. Background

On January 29, 1999, Ahlemeier pled guilty to possession of child pornography. He was sentenced to twenty-one months imprisonment, followed by thirty-six months of supervised release. He voluntarily surrendered on June 14, 1999 and was imprisoned. Ahlemeier was released from prison and was placed on supervised release on October 3, 2000. The term of supervised release was to expire on October 2, 2003.

Ahlemeier's conditions of supervised release were modified on June 10, 2002 to include the additional condition that Ahlemeier enter and complete a sexual offender treatment program. Ahlemeier entered the sex-offense specific program of Psychological Services under counselor William B. Brown ("Brown") on September 18, 2001 and began attending counseling sessions.

On July 6, 2003, Ahlemeier was involved in an incident at a Best Buy Store in Chesterfield, Missouri. Ahlemeier allegedly paced around the store with a camera and took pictures of women. After observing this behavior, the store manager asked Ahlemeier to leave the store. Ahlemeier left, and employees subsequently called the police. The next day, July 7, 2003, Ahlemeier attended a group counseling session and failed to mention the incident to his counselor or support group. On July 8, 2003, Kenneth R. Fitzgerald ("Fitzgerald"), U.S. Probation Officer, informed Brown of the incident. Brown concluded at that time that he would terminate Ahlemeier from the treatment program.

Ahlemeier was charged with stalking based on his actions at the Best Buy store.[1] He received notice of the charge by mail on July 8, 2003 and apparently was

---

[1]The local ordinance prohibiting stalking reads:

A person commits the crime of stalking when a person purposely and repeatedly harasses or follows with the intent of harassing another person. As used in this Ordinance, "Harasses" means to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person to suffer substantial emotional distress. As used in this ordinance, "Course of Conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "Course of Conduct."

not contacted by the police before that time. The stalking charges were dismissed on December 16, 2003.

On July 10, 2003, Fitzgerald filed a petition with the district court requesting that the court revoke Ahlemeier's supervised release. The petition stated that Ahlemeier had violated his supervised release because he had committed a local crime and because he was not in compliance with his treatment program.[2]

Ahlemeier informed Fitzgerald of the charge by a letter dated July 14, 2003. Ahlemeier continued to attend his counseling sessions until July 28, 2003. On July 30, 2003, he was arrested by the U.S. Marshal and incarcerated. On August 4, 2003, Ahlemeier had his Preliminary Supervised Release Revocation and Detention Hearing. The magistrate judge found probable cause to believe Ahlemeier had violated a condition of his supervised release and ordered Ahlemeier be detained until his revocation hearing.

On September 4, 2003, the district court held a Supervised Release Revocation Hearing. The government did not pursue its claim that Ahlemeier had committed a

---

[2]The terms of probation at issue read:

1) While on supervised release, the Defendant shall not commit another federal, state, or local crime; and

2) Special Condition (as modified 6/10/2002): The defendant shall participate in a sex-offense specific treatment program. The defendant shall enter, cooperate, and complete said program until released by the United States Probation Officer. The defendant shall abide by all policies and procedures of the sex-offense specific program. During the course of said treatment, the defendant shall be subject to periodic and random physiological testing which may include but is not limited to polygraph testing and/or other specialized assessment instruments. The defendant shall contribute to the cost of treatment in an amount determined by the probation office.

local crime. However, the government proceeded with its charge that Ahlemeier had failed to participate in a sex-offense specific treatment program. The court agreed and sentenced Ahlemeier to nine months in prison, followed by twenty-seven months supervised release.

On September 11, 2003, Ahlemeier filed a Motion to Arrest Judgment and/or Reconsideration. He filed an amended version of this motion October 1, 2003. On October 2, 2003, following a telephone conference between the attorneys and the district court, the district court set aside its September 4 judgment and set a Supervised Release Revocation hearing for October 24, 2003.

On October 24, 2003 and March 5, 2004, the district court held two Supervised Release Revocation hearings. The district court heard testimony from Fitzgerald, Brown, Josh King, the Chesterfield Police Officer who investigated the Best Buy incident, Craig Houseman, a Best Buy employee and witness of the incident, and Renee Mansker, a Best Buy employee and alleged victim of the incident. The district court found Ahlemeier had violated the terms of his supervised release by failing to mention the Best Buy incident to Brown. Because Ahlemeier withheld this information during counseling, the district court found that he had failed to cooperate and complete the program. The district court again sentenced Ahlemeier to nine months imprisonment, followed by twenty-seven months of supervised release. Ahlemeier now appeals.

## II. Discussion

### A. Standard of Review

If the government proves by a preponderance of the evidence that the defendant violated a condition of supervised release, the district court has the discretion to revoke supervised release. 18 U.S.C. § 3583(e)(3) ("The court may . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the

term of supervised release authorized by statute for the offense that resulted in such term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release."). We review the district court's decision to revoke supervised release for an abuse of discretion. United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003).

## B.    Notice, Non-Disclosure of Evidence, and Hearsay Evidence

Before the court revokes supervised release, the defendant is entitled to a revocation hearing. Fed. R. Crim. P. 32.1(b)(2). In connection with that hearing, a defendant is entitled to: (A) "written notice of the alleged violation," (B) disclosure of the government's evidence against him or her, (C) "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear," and (D) notice of the right to retain counsel or to request appointed counsel. Id. at (A)-(D).

Ahlemeier makes three arguments involving Rule 32.1. First, he argues that his written notice was insufficient. Second, he argues that the government failed to properly disclose evidence against him. Third, he argues that the district court erred in relying on hearsay evidence presented at the revocation hearing. We will address each argument in turn.

### 1.    Notice

Ahlemeier states that his written notice of his alleged violation consisted of the Petition for Revocation of Supervised Release (the "Petition"), a document prepared by the probation officer.[3] The pertinent part of this document reads:

---

[3]The government claims that Ahlemeier received a document entitled Supervised Release Revocation Sentencing Computation Summary, as well as discovery, including the police report. In our analysis, we assume that Ahlemeier's version of the facts are correct.

Violation Number

Special Condition (as modified on 6/10/02): The defendant shall participate in a sex-offense specific treatment program. The defendant shall enter, cooperate, and complete said program until release by the United States Probation Officer. The defendant shall abide by all policies and procedures of the sex-offense specific program. During the course of said treatment, the defendant shall be subject to periodic and random physiological testing which may include but is not limited to polygraph testing and/or other specialized assessment instruments. The defendant shall contribute to the cost of treatment in an amount to be determined by the probation office.

Nature of Noncompliance

On July 8, 2003, this officer contacted Bill Brown of Brown Psychological Services, the offender's sexual offender treatment provider, to inform him of the above charge. Brown indicated that the offender would be terminated from treatment for lack of treatment progress, however, Brown would continue to counsel the offender, for community safety reasons, until action was taken by the Court.

(Petition, p. 2.) The Petition also outlines Ahlemeier's alleged behavior during the Best Buy incident. It relays the observations of the Best Buy manager, who stated that Ahlemeier approached an "employee so he would be able to see down inside her blouse and take photographs" and took a picture of another woman who was bending down to look at merchandise. Id.

Ahlemeier contends that this notice was insufficient because it did not specify that his violation was based, in part, on his failure to mention the Best Buy incident at counseling. However, the notice did state that he was being "terminated from treatment for lack of treatment progress." Id. This put Ahlemeier on notice that his progress in counseling was unsatisfactory. The detailed allegations about his behavior at the Best Buy store informed Ahlemeier that his unsuccessful performance in treatment was related to the Best Buy incident. This was enough to put Ahlemeier

on notice that his alleged violation concerned his participation in counseling, or lack thereof, in relation to the Best Buy incident.

Moreover, Ahlemeier had the benefit of seeing evidence that identified the particular allegations against him on multiple occasions prior to his October 2003 and March 2004 Revocation Hearings. Ahlemeier contends that the government's original position was that Ahlemeier simply failed to attend sessions and that the government did not assert that Ahlemeier failed to cooperate with counseling until the October 24, 2003 hearing. (Ahlemeier's Brief, p. 18.) However, the record shows that during his Preliminary Supervised Release Revocation and Detention Hearing on August 4, 2003, Fitzgerald testified that Ahlemeier had failed to cooperate in counseling and was therefore terminated from the program. Defense counsel asked Fitzgerald about how Ahlemeier allegedly violated the special condition of his supervised release regarding counseling. Fitzgerald testified that "under that condition he is to *cooperate* and complete the program, and by his actions he was not meeting the requirements of the program, so he was terminated." (Preliminary Supervised Release Revocation and Detention Hearing, August 4, 2003, p. 12 (emphasis added).)

Evidence that the charge concerned Ahlemeier's failure to report the Best Buy incident was also presented at Ahlemeier's September 4, 2003 Sentencing Hearing. At the hearing, the district court stated:

> The allegation is that on July 8th of this year the Brown Psychological Services where you were receiving this treatment was notified of the situation in Chesterfield and indicated that *because of that and your failure to report to . . . Brown Psychological Services that you would be terminated from that program*[.]

(Transcript of Sentencing, September 4, 2003, p. 2 (emphasis added).) The charge that Ahlemeier had failed to report the Best Buy incident at counseling and was

terminated as a result was explicitly spelled out by the court.[4] Ahlemeier was put on notice that his failure to disclose the incident would be an issue at his revocation hearing. Therefore, any possible defect in the written notice was harmless. See Fed. R. Crim. P. 31.1(b)(1)(A), (b)(2), 52(a).

### 2.     Non-Disclosure of Evidence

Ahlemeier contends that the government failed to disclose the evidence against him because he did not receive a list of witnesses that the government planned to present at the revocation hearing. Rule 32.1(b)(2) does not require the disclosure of a witness list but rather a disclosure of the evidence upon which the government relies to support the violation. In this case, the government provided Ahlemeier with discovery that included the names of several witnesses: Police Officer King, the alleged victim, Fitzgerald, and Brown, as well as the relevant police report. It should have come as no a surprise to Ahlemeier that these witnesses testified, and we find no evidence to suggest that the lack of a witness list inhibited Ahlemeier from preparing his defense.

### 3.     Hearsay Evidence

Ahlemeier argues that his revocation of supervised release is unsupportable because the district court relied on an expert's decision to terminate him from treatment, and the decision to terminate him from treatment was based on incorrect and unreliable hearsay.

---

[4]The fact that the government subsequently referred to the charge in shorthand, stating merely that Ahlemeier failed to attend counseling sessions, (see, e.g., Government's Supervised Release Revocation Hearing Memorandum, filed October 6, 2003, p. 2, Hamilton Add. p. 68.), does not erase the prior testimonial evidence and statements made by the court. The evidence and statements focused on Ahlemeier's failure to disclose his experience at Best Buy in counseling as giving rise to a violation of a condition of his supervised release.

First, we question whether this is truly a "hearsay" issue. Persons on probation or supervised release are routinely ordered to participate in drug, alcohol, or sex offender treatment programs. Successful participation in and completion of those programs is a routine condition of supervision. In many cases, a court must rely upon the group counselor to assess whether the person is making satisfactory progress and can remain in the group. Those decisions made by a counselor can be based on a number of factors, including hearsay from third persons, lack of participation, or cooperation by the offender, as well as other subjective factors. There may well be cases where the information relied upon by a counselor to terminate a person from the program is so unreliable that the termination would not support a finding that a condition of supervision had been violated. This is not such a case. There is no indication the counselor acted in an arbitrary or capricious manner when he terminated Ahlemeier for his failure to report an incident the counselor deemed to be quite serious.

Moreover, the normal rules for use of hearsay at a revocation hearing were clearly met in this case. "Hearsay evidence offered by the government may be admitted at a supervised release revocation hearing if the evidence is sufficiently reliable and the government has a 'reasonably satisfactory explanation' for not producing the witness." United States v. Martin, 371 F.3d 446, 448 (8th Cir. 2004), (quoting United States v. Zentgraf, 20 F.3d 906, 910 (8th Cir. 1994)). The district court must engage in a balancing test and weigh the defendant's right to confront adverse witnesses against the grounds asserted by the government for not producing the witness. United States v. O'Meara, 33 F.3d 20, 21 (8th Cir. 1994). "The [g]overnment may show good cause by demonstrating the hearsay evidence is reliable and by offering a reasonably satisfactory explanation why live testimony is undesirable or impracticable." Id.

Ahlemeier makes clear in his reply brief that his hearsay argument concerns the information Fitzgerald told Brown that led Brown to determine that Ahlemeier was

not progressing in treatment and terminate him from the program. It is true that Brown did not see the incident at the Best Buy store first hand and that he relied on this information when making his treatment decision. However, each person who acted as an underlying source of information testified in the hearing, and Ahlemeier had the opportunity to cross-examine each one. Brown made the ultimate decision that Ahlemeier was not cooperating and should be terminated; Brown testified and was cross-examined. In making this decision, Brown relied on information from Fitzgerald; Fitzgerald testified and was cross-examined. Fitzgerald relied on the police report, drafted by King; King testified and was cross-examined. King drafted his police report based on statements from Houseman; Houseman testified and was cross-examined. Houseman witnessed the events. Thus, Ahlemeier's right to confront adverse witnesses was not infringed.

## C.    Standards of Supervised Release

Ahlemeier contends that the district court abused its discretion when it revoked his supervised release and sentenced him because his alleged violation does not fit within the standard for revocation of supervised release. This argument is spurious. One condition of Ahlemeier's supervised release was that he was required to "participate in a sex-offense specific treatment program." The requirement further stated: "The defendant shall enter, cooperate, and complete said program until released by the United States Probation Officer."

At the supervised release revocation hearing, Brown testified that Ahlemeier attended a group counseling session on July 7, 2003, one day after the Best Buy incident, and failed to mention the incident. Brown testified that by withholding this information from the group, Ahlemeier was unable to use his resources to prevent a relapse of deviant behavior. When asked directly whether Ahlemeier was cooperating in treatment, Brown answered, "Certainly, he was not. My concern is the description of what was given to me in that he was in fact relapsing and he was withholding the

information, essentially. He was not cooperative." (Transcript of Supervised Release Revocation Hearing, 10/24/03 at 91.)

In addition, when Brown learned of the Best Buy incident on July 8, 2003, he decided to terminate Ahlemeier from the treatment program. After this date and until Ahlemeier's incarceration, Brown continued to counsel Ahlemeier in "community protection status," an arrangement in which Brown would continue to see Ahlemeier, though Ahlemeier remained terminated from the treatment program. An offender in community protection status cannot complete the treatment program.

The government's burden was to prove by a preponderance of the evidence that Ahlemeier had violated a condition of his supervised release. The government presented direct testimony from Ahlemeier's counselor that Ahlemeier was not cooperating in treatment. The district court also heard testimony that Ahlemeier had been terminated from the treatment program and no longer had the ability to complete the sex-offense specific treatment program, as required by a condition of his supervised release. It was therefore not an abuse of discretion for the district court to conclude that Ahlemeier had violated the condition that required him to cooperate in a sex-offense specific treatment program.

## D.     Fairness

Ahlemeier also argues that withholding information in a counseling session does not "rise[] to the level of an ultimate finding that there was a violation of the conditions of supervised release for which the penalty is incarceration of nine (9) months." (Ahlemeier's Brief, p. 24.) Ahlemeier's assertion here seems to be that being incarcerated for nine months is too stiff a penalty for not completing his supervised release conditions. This is simply not the case. As discussed above,

> The court may . . . revoke a term of supervised release, and require the
> defendant to serve in prison all or part of the term of supervised release

-11-

authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release.

18 U.S.C. § 3583(e). Violating a condition of supervised release constitutes a Grade C Violation. U.S. Sentencing Guidelines Manual § 7B1.1(a)(3). "Upon finding of a Grade C violation, the court may . . . revoke . . . supervised release." U.S.S.G. § 7B1.3(a)(2). For an individual with a Grade C violation and a criminal history category of I, as in the case before us, the Guidelines suggest a term of imprisonment between three and nine months. U.S.S.G. § 7B1.4(a). Ahlemeier received nine months, within the suggested range.

## E. Initiation of Proceedings by Probation Officer

Last, Ahlemeier argues that the probation officer exceeded his authority when he commenced proceedings to revoke Ahlemeier's supervised release. In support, he cites United States v. Jones, 957 F.Supp. 1088, 1091 (E.D. Ark. 1997) (holding the government, and not the probation office, should commence supervised release revocation proceedings). However, the balance of the case law holds the practice of probation officers petitioning the court to revoke supervised release is legal. The circuit courts to address the issue have uniformly disagreed with Jones and upheld the practice. United States v. Amatel, 346 F.3d 278, 280 (2d Cir. 2003) (holding that Jones stands alone and that every case decided since Jones has affirmed the legality of petitions by probation officers); United States v. Cofield, 233 F.3d 405, 408-09 (6th Cir. 2000) (holding probation officer has authority to file a petition to revoke supervised release); United States v. Mejia-Sanchez, 172 F.3d 1172, 1174 (9th Cir. 1999) (same); United States v. Davis, 151 F.3d 1304, 1306 (10th Cir. 1998) (same). We join our sister circuits and hold that probation officers may properly petition the court for a revocation of supervised release.

-12-

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____